WILLIAM HAY v. EDWY C. REID.

*Libel    and    slander—Justification—Public    officers—Gambling—*
*Evidence.*

1. In justifying the publication of a statement that a village
   marshal had knowledge that "gambling was being carried on
   before his very eyes, and yet he made not the least effort to
   suppress it," it is not necessary to prove that the officer was in
   the room, and saw the persons gambling there, but the
   expression "carried on before his very eyes" is fully met by
   proof that he knew that gambling was going on in a certain
   room in the building, while he was in the building, and that
   he knew where the room was located.

2. Where two or more persons play at cards in a saloon where
   liquors and cigars are kept for sale, with the agreement that
   the one that is defeated at such game shall pay for the liquor
   or cigars for the party, such playing is gambling.

3. Proof that a village marshal was present in a saloon in the
   village, and saw persons playing cards there "for a wager of
   five cents, or any other sum, or for the wager that the party
   losing should pay for the drinks or cigars of the parties playing,
   and that he took no steps to suppress it, justifies the publica-
   tion of the charge afterwards made that gambling was being
   carried on before the marshal's very eyes, and yet he made no
   effort to suppress it.

4. A statement contained in an article charging a village marshal
   with neglect of his official duty generally, and particularly in
   failing to suppress gambling in the village, that "he was called
   to the place from the bar and gamblers' table, and nothing
   better could have been expected of him," is held to mean that
   the officer was a drinking man and a gambler before he was
   appointed marshal.

5. The right of criticism upon the conduct of a public officer does
   not embrace the right to make a false statement of his acts
   involving his integrity or faithfulness in the discharge of his
   duties.

   So *held,* where an alleged libelous article charging an officer
   with neglect of duty stated, among other things, that the
   censure visited upon the officer was for making a certain
   arrest in a fit of temper, and failing to arrest dozens of others

who more deserved arrest than the one so arrested; which statement is held not to be mere comment and criticism on the acts of a public officer, but, if false, to be actionable.

6. In such a case the statement that the officer had been thoroughly corrupt in the discharge of his official duties, and that there was no possible palliation for his many offenses, cannot be said to be a mere summing up of what had gone before, but rather stands out as an independent and further charge of corruption and other offenses in office.

7. A plaintiff in a libel suit for the publication of an article containing several libelous charges is entitled to an instruction to the jury that the effect of the defendant's justifying as to a portion of the charges, and not as to the whole, is only to mitigate or reduce the damages which the plaintiff would otherwise be entitled to recover.

8. Where a plaintiff is offered as a witness, any cross-examination affecting the merits of the cause is admissible, whether the particular transaction sought to be shown by such cross-examination has been referred to on the direct examination or not.

9. Where the only material fact to be established is that gambling was going on in a particular room, and that an officer knew it, it is improper to ask a witness who has testified to playing cards in the room how much he lost between certain dates, that fact being entirely immaterial.

10. In an action for libel against a newspaper publisher for publishing an article charging that gambling was going on in the village of which the plaintiff was marshal, and that he, with knowledge of the fact, failed to suppress it, the defendant testified that the first information that he had that gambling was being so carried on was from reading an article in a village paper, and that he was afterwards asked why he had not made as full a statement of the matter as the paper named, and that this led up to the publication of the alleged libelous article. And it is held that under this testimony the other article was properly admitted in evidence, not as proof of the facts therein stated, but to show defendant's good faith and in mitigation of damages.

11. Under the rule in this State, where justification and facts in mitigation of damages can be pleaded jointly in an action for libel or slander, and where facts not amounting to a justification can yet be used in mitigation of damages, and where the defendant is permitted to state the knowledge and information upon which he acted, and to give color to his own motives in the transaction, to reduce the damages, great care should be taken to confine him closely to the issues in the case, and to

exclude all testimony of matters that could have had no possible bearing upon the publication or speaking of the words complained of.

12. It is proper for a defendant in a libel suit to state that he had no ill will against the plaintiff when he made the publication, and that he had no other motive in such publication than the public good. But it is error to allow him to state that in the article he did not intend to charge the plaintiff with the commission of any crime or misdemeanor when the article is unambiguous.

Error to Allegan. (Arnold, J.) Argued February 27, 1891. Decided April 17, 1891.

Case. Plaintiff brings error. Reversed. The facts are stated in the opinion.

*Padgham & Padgham*, for appellant.

*J. C. FitzGerald, H. Hart,* and *C. R. Wilkes,* for defendant.

[The points of counsel are fully stated in the opinion. —REPORTER.]

MORSE, J. On November 26, 1887, the defendant, who was then the publisher of the Allegan Gazette, published in such newspaper the following article of and concerning the plaintiff, who was then marshal of the village of Allegan:

"While silent as the clam, he in several other respects resembles, as to the charges against Mr. Eppink, the editor of the Tribune undertakes a defense of Marshal Hay against the Gazette's strictures concerning his course in the arrest of Ben Stearns. Truth is not desirable in the Tribune, as the organ of a ring that is a foe to all that is truthful and decent; hence it avers that we contended that the arrest should not have been made. Instead of this, we expressly stated that Stearns got exactly what he deserved. The censure visited upon Hay was for his making this arrest in a fit of temper, and

failing to arrest dozens of others who more deserved arrest than Stearns did. This was a point the. Tribune was careful to avoid. Hay's delinquency in this regard is notorious. Poor devils from the country, who have no money with which to pay their fine, or others from about town, who can be advantageously used at elections, go free, while those who have money, or cannot be used at the polls, are jailed promptly enough.

" There was another count in the indictment which the Tribune found it convenient to ignore. It was Mr. Hay's knowledge that gambling was being carried on before his very eyes, and yet he made not the least effort to suppress it. That it would have been hard for him to do so when, had he pulled the den, he would probably have caught his superior officer there, is an explanation of this delinquency in part, but is no excuse for it. Mr. Hay has been thoroughly corrupt in his discharge of duty as marshal, and there is no possible palliation of his' many offenses. He was called to the place from the bar and the gamblers' table, and nothing better could have been expected of him. He is a fair type of the moral quality of the ring he represents. What an admirable county clerk he would have. made!"

This suit was brought, alleging such article to be libelous, in that it charged the plaintiff with being corrupt as a public officer, and that as such officer he neglected to perform the duties of his office, and that he was guilty of many offenses as such officer, for which there was no excuse, and that he was unfit and unworthy to hold the office of marshal of said village; and that the . defendant meant and intended by such article to have it believed and understood by the readers of said newspaper and the public generally that plaintiff was a drinking man and a gambler, and was such when he was appointed marshal; that he had violated the laws of this State by gambling, and was liable to be punished for violation of the criminal laws;—

" And meaning and intending thereby to have it understood and believed that said plaintiff was a corrupt and bad citizen, and guilty of disregarding the laws of state

and society, intending thereby to destroy his good name and credit, and to hold him, the said plaintiff, up to public scorn and derision, and to disgrace and degrade him with the people of said village, county, and State, and to bring him into general disrepute;"—

By means of which the plaintiff had been greatly injured in his good name, etc., to his damage.

The defendant pleaded the general issue, and gave notice under such plea that the plaintiff was at the time of the publication soliciting the office of county clerk of Allegan county, and was marshal of the village, and his acts and doings were matters of public concern and interest, and that the publication was made without malice, and believing the same to be true; and that he published the same in the interest of good government, and for the public good. The defendant also justified the publication as a true statement of facts; and further alleged—

"That it was matter of common report in the community wherein the said plaintiff then resided that the said plaintiff had arrested Stearns in a fit of temper, and had failed to arrest dozens of others who more deserved arrest than Stearns did; and that plaintiff had knowledge that gambling was being carried on in said village of Allegan, before his very eyes, and yet he made not the least effort to suppress it; and that said plaintiff had been thoroughly corrupt in his discharge of duty as marshal of the village of Allegan, in said county; and that he had, just prior to his having been appointed marshal of said village, been a frequenter of saloons and barrooms and places where intoxicating liquors were sold as a beverage, and where card-playing and gambling was being carried on in his presence; and that such reports had, previous to said alleged publication, and often, come to the knowledge of said defendant, and were by said defendant believed to be true, and were in fact true, of and concerning said plaintiff, as stated and charged by this defendant in said alleged libelous words and article."

Upon a trial before a jury the defendant had verdict and judgment, and plaintiff alleges errors upon such

trial. There are 36 assignments. We shall notice only those which we deem of importance.

The circuit judge instructed the jury that there were three distinct matters in the publication which, if untrue, were libelous. He said:

" 1. The language ' Poor devils from the country, who have no money with which to pay their fine, or others from about town, who can be advantageously used at elections, go free, while those who have money, or cannot be used at the polls, are jailed promptly enough.' Now, as to this language, if this statement here made refers to the action of the plaintiff as marshal of the village, and you so find, then it plainly imputes to him corrupt practices and a corrupt purpose in the matter of arrests as marshal, and in this way tends to disgrace and render him odious in the sight of all good men; and I say, if you find that this charge refers to the plaintiff as marshal, it is libelous, and actionable *per se*."

We think the fault found with this instruction by plaintiff's counsel is well taken. It is plainly evident from the language of the whole article, which must be construed as a whole, that this item in such article did refer to plaintiff as marshal, and that the court was in error in submitting the question whether it so referred to him to the jury.

2. The court further said:

"The article also contains this language: 'There was also another count in the information the Tribune found it convenient to ignore. It was Mr. Hay's knowledge that gambling was carried on under his very eyes, and yet he made not the least effort to suppress it. That it would have been hard for him to do so when, had he pulled the den, he would probably have caught his superior officer there, is an explanation of this delinquency, but it is no excuse for it.' If the plain meaning of this language is that Mr. Hay had knowledge of gambling, and that he did not take any steps to suppress it because his superior officer was engaged in gambling, then it clearly imputes to him a corrupt failure to discharge

official duty, and is therefore libelous. If it simply means that he knew of gambling, and failed to take any steps to suppress it, it charges official misconduct, and is for this reason libelous."

The court further instructed them that the language was not privileged. In speaking of the justification of this portion of the article the court said in substance that such justification, in order to be a defense, must be as broad as the charge.

There was testimony tending to show that while the plaintiff was marshal there was gambling going on in a room over the saloon in McDuffee's hotel, and that the plaintiff was informed of it, and that the president of the village was playing there, and plaintiff was informed of that fact, and took no steps to suppress it; that on Sunday a tray, upon which was liquor in glasses, was carried from the saloon through the hotel office, where plaintiff was sitting or standing, and upstairs to this room. There was also testimony tending to show that while plaintiff was marshal he was in saloons, and saw people playing at cards, and knew that the one who was defeated paid a certain amount for the game, or treated the players to cigars or beer, and that he made no effort to prevent such playing. In view of this testimony the court further instructed the jury substantially that if the language with reference to gambling going on under his very eyes and making no effort to suppress it meant the gambling in the room over McDuffee's saloon, then, to justify the charge, the evidence must show that the plaintiff had knowledge that gambling was being carried on there, and took no steps to suppress it; that it was not necessary that the proof should show that he actually saw the gambling; that—

"If he had information to such an extent, and from such a source or sources, as would lead a reasonable and prudent man to understand and know that gambling was going on there, and, knowing this, he made no

effort to suppress it, the charge in this respect is made out."

And that, while it was true that the marshal had no right to break the door to a room that was locked without a warrant, he had the right to enter peaceably a place not locked, where gambling was going on; and he could lawfully make complaint and institute an investigation to procure a warrant for arrest; and he could lay his knowledge before the village board; and it was his duty, if he had knowledge that gambling was going on there, to take some steps to suppress it, other than inquiring of the persons whom he understood were engaged in the act of gambling. We think this instruction was correct. It was not necessary that the defendant should prove that plaintiff was in the room, and saw the persons gambling there. The expression "carried on before his very eyes" would be fully met by proof that the plaintiff knew that gambling was going on in a certain room in the building, while he was in the building, and knew where the room was located.

The circuit judge also correctly instructed the jury that when two or more persons play at cards in a saloon where liquors and cigars are kept for sale, with the agreement that the one that is defeated at such game shall pay for the liquor or cigars for the party, such playing is gambling; and that if the charge in the article did not refer to this one place over McDuffee's saloon, but meant gambling generally, then, if they found that the plaintiff, while he was marshal, and before the publication of the article, was present in a saloon in said village, and saw parties playing cards there for a wager of five cents, or any other sum, or for the wager that the party losing should pay for the drinks or cigars of the parties playing, and that he took no steps

to suppress it, then the defendant would not be liable for the words—

"Gambling was being carried on before his very eyes, and yet he made not the least effort to suppress it."

3. The court further charged the jury that the words, "He was called to the place from the bar and the gamblers' table, and nothing better could be expected of him," if such language meant that he was a drinking man and a gambler in the ordinary acceptation of these terms, were also libelous, because it would tend, and was calculated, to render him odious and to disgrace him in the estimation of men. We think, as contended by plaintiff's counsel, that the words as they stood did mean that the plaintiff was a drinking man and a gambler before he was appointed marshal, and could have no other interpretation, and the court should have so instructed the jury instead of leaving it to them to determine whether such was the meaning or not.

The court further, in this regard, instructed the jury, if they found that plaintiff, prior to and at the time of his appointment as marshal, was a frequenter of saloons in which intoxicating liquors were kept for sale, and sold by the glass to persons who drank at the bar of such saloons; that in such saloons were kept tables at which persons played at cards with the wager of five cents or any other sum of money, or with the wager that the person losing at such games should pay for the drinks or cigars for the persons engaged in the game; and that the plaintiff took part in such games, and drank beer or any other kind of liquor at such bar,—then the defendant would not be liable for such words. This instruction was correct. Gambling is gambling, whether it is for five cents or for a larger sum, and the loser at cards who buys his adversary a drink or a cigar as a penalty for

losing the game is engaged in gaming the same as if he paid him money.

But the court erred in instructing the jury that certain portions of the article were not libelous, to wit:

1. That the words: "The censure visited upon Hay was for his making this arrest in a fit of temper, and failing to arrest dozens of others who more deserved arrest than Stearns did,"—were mere comment and criticism on the acts of a public officer, and not actionable.

The right of criticism upon the conduct of a public officer does not embrace any right to make a false statement of his acts involving his integrity or faithfulness in the discharge of his duties.[1] If the plaintiff did not arrest Stearns in a fit of temper, or fail to arrest others more deserving of arrest than Stearns, and the plaintiff was damaged by such statement, as he necessarily would be, in his good name and credit as an officer, the defendant is responsible for such false publication. The fact, if it be a fact, that he published such statement believing it to be true, and with the best of motives, looking towards the public good, may be shown in mitigation, and reduce the damages to a mere minimum or nominal sum, but it cannot wholly excuse the publication; nor is such publication, if untrue, in any way privileged.

2. The court also said to the jury that the words: "Mr. Hay has been thoroughly corrupt in his discharge of duty as marshal, and there is no possible palliation of his many offenses"—were a mere conclusion or deduction of the defendant from the other statements in the article, and did not state any libelous or actionable fact.

In this the circuit judge was mistaken. This sentence alone and standing by itself was more damaging and libelous than all the rest of the article combined, and in its connection with the article cannot be said to be a

---

[1] See *Belknap v. Ball*, 83 Mich. 583.

mere summing up of what had gone before, but rather stands out as an independent and further charge of corruption and other offenses in office. It seems to us further, upon an inspection of the whole record, that there was no proof tending to justify the statement in the article that "poor devils from the country, who have no money with which to pay their fine, or others from about town, who can be advantageously used at elections, go free, while those who have money, or cannot be used at the polls, are jailed promptly enough;" and the plaintiff's fifth request should have been given, to the effect that the plaintiff was entitled to recover damages for that part of the publication.

The plaintiff's ninth request should have been given, as follows:

"If you find evidence to sustain one or more of these charges, as contained in the said publication, which charges I have now enumerated, but do not find evidence to sustain the truth of all of them, still the plaintiff would be entitled to a verdict at your hands, and the effect of justifying as to a part of the charges, and not the whole, would be only to mitigate or reduce the damages which the plaintiff would otherwise be entitled to recover at your hands."

The plaintiff was also entitled to his eleventh request, as follows:

"Evidence has been introduced on the trial of this case regarding the suicide of one Stevenson some time in the fall of 1887. I charge you that all the evidence regarding said Stevenson can be used only to fix dates, and that it has no other bearing whatever on the merits of the case, one way or the other."

This testimony of the death of Stevenson was ostensibly introduced for the purpose of fixing the time of certain conversations and occurrences. Much, if not all, of it was clearly inadmissible, and may have had a preju-

dicial influence upon plaintiff's case. There was no proof, and nothing save rumor and a newspaper article, tending to show that Stevenson had ever gambled in Allegan, or that the cause of his death had the remotest relation to any issue in the case.

The plaintiff being offered as a witness, any cross-examination affecting the merits of the cause was admissible, whether the particular transaction sought to be shown by such cross-examination had been referred to on his direct examination or not.

The question asked of Ira Agan, who had testified to playing cards in a room in the City Hotel, up-stairs, "How much did you lose from August till you left in November?" was improper, and should have been rejected. It was entirely immaterial how much money he had lost; the only material fact to be established being that gambling was going on there, and plaintiff knew it. Nor was it material whether or not liquors were brought there while this witness was playing.

The defendant testified that the first information that he had that gambling was going on in Allegan was from reading an article in the Allegan Record. The article was admitted in evidence. The defendant further testified that he was afterwards accosted by several people to know why he had not made as full a statement of the gambling going on in town as the Record, and thereupon he commenced making inquiries, which finally led up to the publication of the alleged libelous article. Under this testimony the article in the Allegan Record was properly admitted in evidence, and the court very properly told the jury in his charge that none of the facts stated in the article could be taken as proof of the facts therein stated, or of any fact in the case, and that the article could only be used to show the good faith of the defendant to mitigate the damages.

The examination of the defendant, as conducted on the trial, is open to serious objection. He was asked by his counsel the following question:

"I wish you would state, beginning with what information and sources of information you had, the information you had at the time you wrote that article, beginning with the circumstances attending the composition of it and before, what knowledge you had about it, and then of the writing of it, all through. I don't want to be asking questions right along."

The question was objected to as incompetent and immaterial, but it was overruled, and the defendant was permitted thereafter not only to give all the sources of his information, but the conversations he had with various individuals, and the great efforts that he made to break up the gambling in the village, and to reform young men who had acquired the habit of gambling and drinking. Much of this, especially some of the conversations and the efforts of defendant in the interest of the general morality of the village, was entirely irrelevant to any issue in the case, and could have no other influence than to exalt the defendant and prejudice the plaintiff's case. The defendant had a right to show what he had been informed as to gambling in the village, Hay's knowledge of it, and his failure to take any means to suppress it, and any other information which had any tendency to show that he believed he was stating the truth as to plaintiff in regard to any charge made in the article, as bearing upon his good faith in such publication, and in mitigation or reduction of damages; but it was entirely immaterial what he said to young men or others about the sin of gambling or drinking, or what they said to him about their wives or families, or the promises of reformation made by them to him. The better way would have been to have directed defendant's attention to the matters involved in the issue, and to have confined his

testimony to such matters. It was not material to any issue in the case how much money any person lost at cards, or whether the games were played fairly or with marked cards, unless the knowledge of the same was brought home to plaintiff. It was sufficient to show that defendant was informed that gambling was going on, and who played there, and that Hay was also informed of it, and did nothing to prevent it. The matter of detail of defendant's information was carried to such an extent in his testimony that many things of no relevancy whatever in the case, and of which Hay was not shown to have knowledge, were placed before the jury to the advantage of the defendant and the prejudice of the plaintiff.

Under the rule in this State, where justification and facts in mitigation of damages can be pleaded jointly in an action of libel or slander, and where facts not amounting to justification can yet be used in mitigation of damages, and where the defendant is permitted to state the knowledge and information upon which he acted, and to give color to his own motives in the transaction, to reduce the damages, great care should be taken to confine him closely to the issues in the case, and to exclude all testimony of matters that could have had no possible bearing upon the publication or speaking of the words complained of. With the greatest care on the part of the trial judge in such cases, the jury may, and do sometimes, confound matters in mitigation with matters of justification, and find things proven which really rest only upon hearsay, to wit: The information of the defendant obtained solely through hearsay, and which is not legitimate evidence for any purpose except to show the good faith of the defendant, and to reduce the damages.

It was proper for the defendant to state that he had no ill will against the plaintiff when he made the publi-

cation, and that he had no other motive in such publication than the public good. But it was error to allow him to state that in the article he did not intend to charge the plaintiff with the commission of any crime or misdemeanor. The article was not ambiguous, and defendant must be held to have intended the meaning that his words obviously conveyed.

We find no other errors in the record; but for those noted the judgment will be reversed, and a new trial granted, with costs of this Court to plaintiff.

The other Justices concurred.