MCGUIRE *v.* VAUGHAN.

1. LIBEL—JUSTIFICATION—PLEADING—EVIDENCE.

In an action for libel in charging plaintiff with having committed an assault with intent to do great bodily harm, less than the crime of murder, the specific averment being that plaintiff had seized a pitchfork and thrust it into the thigh of a certain person, evidence that plaintiff ran the fork through the person's clothing, but that it did not penetrate his thigh, is admissible under a special notice of justification setting up the facts.

2. SAME—HARMLESS VARIANCE.

Where the defendant in an action for libel, under a special notice of justification, has proved the truth of the charge that plaintiff was guilty of a criminal offense, which constituted the gist of the publication sued upon, the fact that the article averred that plaintiff had been held for trial for such offense, when in fact he had been held for examination only, becomes immaterial.

3. RECORD ON APPEAL—INSTRUCTIONS—ASSIGNMENTS OF ERROR.

Where an instruction to the jury, as contained in the record, includes words that render it manifestly erroneous, but such words are omitted from the instruction as embodied in the assignment of error, the charge will be presumed to have been correctly given.

Error to Clinton; Daboll, J. Submitted June 5, 1895. Decided July 13, 1895.

Case by Eugene McGuire against Coleman C. Vaughan for libel. From a judgment for defendant, plaintiff brings error. Affirmed.

*Patterson & Flynn,* for appellant.

*Will H. Brunson* and *Fedewa & Walbridge,* for appellee.

LONG, J. This action is brought to recover damages for the publication of the following article, which is claimed to be libelous:

"Eugene McGuire, who, but a few months ago, was telling the people of this county how to live, and who was officious in the conventions of the Populists as a leader, has come to grief at his home near Bath. The Lansing Journal has the following in his case: 'Some months ago, McGuire entered into an agreement to work a farm near Bath village for a certain Lansing gentleman. In accordance with a time-honored custom, McGuire had plenty of trouble with his landlord, and the latter had been frequently sick of his contract. A day or two ago, it is alleged, the landlord sent a man to the farm for some cattle. The tenant refused to give up the animals, and an altercation ensued, in which McGuire, it is charged, finally seized a pitchfork, and ran it into the thigh of the man who wanted the cattle. It is claimed that he was in a great rage, and sent his daughter into his house after a revolver, threatening to kill somebody when he got it. Other parties interfered, and took the revolver away. McGuire was then arrested on a warrant charging him with an assault with intent to do great bodily harm, less than murder. He was taken before a justice of the peace, and held for trial. Not giving bail, he was taken to St. Johns, and lodged in the county jail.' "

Plaintiff alleges in his declaration that he has been greatly injured by such publication by the defendant in his newspaper, the Clinton Republican, the defendant meaning by such publication to charge that the plaintiff committed the crime of an assault with intent to do great bodily harm, less than the crime of murder, and meaning and intending by such publication to charge that

plaintiff had committed a felony; also meaning that plaintiff was a difficult man to do business with, and a dishonest man; also meaning to charge that said plaintiff intended to commit the crime of murder; also meaning to charge that the plaintiff was a disturber of the public peace, and that to preserve the public order it was necessary to disarm him; and also to charge that the plaintiff was taken before a justice of the peace, and held for trial in the circuit court on the charge of having committed an assault with intent to do great bodily harm, less than the crime of murder, and that the plaintiff was unable to find bail, and was confined as a prisoner in the county jail of Clinton county.

To this declaration the defendant pleaded the general issue, and gave notice of justification and of facts in mitigation, to show want of knowledge, and that the article did not mean what the innuendoes in the declaration alleged. The printing of the article in the Clinton Republican, and its publication by defendant, are not denied. The defense is that the article was true. The defendant, at the time of the publication of the article, was in the State of New York, and knew nothing of the matter personally, and had no acquaintance with the plaintiff. The article was taken from the Lansing Journal, and credited to that paper in the publication. It had also been published in the Ingham County Democrat and the Ingham County News.

It is conceded on the part of the defendant that the article is libelous *per se*, but it is claimed that the jury found the article to be true, or, at least, found, under the charge of the court, that the plaintiff was guilty of the several acts of misconduct imputed to him in the article. The notice under the plea sets forth that—

"This defendant will further prove that on or about the 1st day of August, 1893, one A. C. Crosby held a valid chattel mortgage upon the cattle located upon the farm aforesaid, which chattel mortgage was executed by David R. Corey; that in consequence of the abuse and

misuse of said cattle by the said McGuire, as claimed by the said Corey, which fact came to the knowledge of said Crosby, it was arranged between the said mortgagor and mortgagee that some one should be sent for said cattle, and remove them from said farm by virtue of the terms of said mortgage; that, in pursuance of said arrangement and understanding, one G. J. McClintock was sent to the farm aforesaid, with the mortgage aforesaid, for the purpose of getting the cattle; that when the said McClintock reached the said farm in question, and saw the said plaintiff, Eugene McGuire, the said McClintock informed the said McGuire that he had come for the cattle, and that he proposed to take them by virtue of the mortgage which he held in his hand, and which he presented to said Eugene McGuire; that the said Eugene McGuire thereupon refused to give up the cattle, and seized a pitchfork, and threatened to run it through the said McClintock if he went another step; that, at the time of said threat, he was advancing upon the said McClintock with pitchfork in hand, and ran the tines of said pitchfork into the trousers of the said McClintock, over the abdomen, tearing a hole in his said trousers, and the said McClintock was obliged to grab hold of said pitchfork, and use all the force and power he possessed, to prevent the said McGuire from running the said pitchfork into him; that the said McGuire became greatly enraged, and sent his daughter into the house after a revolver; that at the time of sending for said revolver the said McGuire's acts, words, and conduct put the said McClintock, and others who were present with him, in great fear of their lives, and the said McGuire threatened to kill some one when he got it; that upon this occasion the said McGuire also threatened and attempted to use said pitchfork upon a man by the name of Secord, who was there with Mr. McClintock; that the revolver was taken away from his daughter by some one who went with said McClintock after the cattle, before she gave the same to her father; that after said altercation above set forth, upon the complaint of said G. J. McClintock, the said Eugene McGuire was arrested with a warrant charging him with assault upon the said McClintock with intent to do great bodily harm, less than murder; that said Eugene McGuire was then taken before a justice of the peace in and for the county of Clinton, and held for examination, and, not giving bail, the said McGuire, by order of the court, was placed in the custody of the sheriff in and for the

county of Clinton, and the said sheriff took the said Mc-Guire in custody to St. Johns, and lodged him in the county jail.

"This defendant will further prove that the popular acceptation of the words 'held for trial,' in connection with which they are used in the latter part of said article, is 'held for examination,' and that he will prove that the said words were so understood by various people who read the article in question, and that he will prove that such is the fair meaning of said words.

"All of which facts set forth in this notice will be offered in proof, on the trial of this cause, in mitigation and justification of the article claimed to have been published by this defendant."

Defendant gave testimony tending to show that all the facts set up in the notice under the plea were true. The court excluded the testimony offered to show the meaning of the words "held for trial."

At the close of the testimony the plaintiff requested the court to charge the jury as follows:

"2. The article published charges that McGuire 'seized a pitchfork, and ran it into the thigh of the man who wanted the cattle.' This charge is libelous, and there is no proof in the case that it was true; and, for its publication, plaintiff must recover."

"4. The plaintiff claims that the words, 'McGuire was then arrested on a warrant charging him with an assault with intent to do great bodily harm, less than murder. He was taken before a justice of the peace, and held for trial,'—mean that he was held for trial on said charge in the circuit court after an examination before a justice of the peace. This, I charge you, must be taken to be the true meaning of these words."

"18. The sting of this article is the imputation of crime; and it is for you, gentlemen of the jury, to say to what extent facts were poisoned by fiction, and whether the publication, by misrepresenting the incidents of the charges imputed to plaintiff in the libelous article, and by misstating the conduct and appearance of the parties, and the circumstances attending his arrest, has not given to the grains of truth a color and weight which otherwise they would not possess. You have the evidence before you, and you have a right to consider it in all its parts, and determine what parts, if any, of the libelous article,

have been justified, and what parts have not; and, in doing so, you give to each part such meaning as would be accepted among people generally under like circumstances."

These requests were refused, and the court charged the jury, substantially, that the article was libelous *per se*, and, unless the defendant proved by a preponderance of evidence that all the things therein charged against the plaintiff were true, their verdict must be for the plaintiff, and, if only part of the article was proved to be true, the plaintiff would still be entitled to recover. The court further stated to the jury, in substance, that if the article meant to charge that the plaintiff made an assault with intent to do great bodily harm, less than the crime of murder, and the jury found that he did commit an assault upon McClintock with intent to do great bodily harm, less than the crime of murder, the justification, as to that, would be complete, though the plaintiff was discharged on the examination before the magistrate. The court also left it to the jury to determine the meaning of the words "held for trial," with the direction that, if they found the words meant held for examination before the magistrate, the truth of the words was established. The jury returned a verdict in favor of the defendant.

1. The contention of the plaintiff is that the court was in error in permitting counsel for defendant to state to the jury that he would prove that the plaintiff advanced on McClintock with the pitchfork, and it penetrated his pants, but did not penetrate his person, and he did not run the fork into McClintock's thigh. Plaintiff's claim is that the notice did not state the facts of the transaction as set forth in the published article, and that the proofs stated in the notice would not show the truth of the article sued upon; that his offer must be to prove the truth of his statements precisely as charged in the declaration; and that no such offer was made. The notice was very specific. It was not a general and sweeping notice of justification of all matters complained of, but was spe-

cific as to each charge made by the innuendoes. The general charge in the article, and the whole gist of it, however, was that the plaintiff had been guilty of an assault upon McClintock, with intent to do great bodily harm, less than the crime of murder. This charge was sought to be justified by showing its truth. While the article stated that the pitchfork was run into the thigh of McClintock, the notice only claimed, and the proof tended only to show, that the fork was run through the pants, and not into the thigh. The other facts, however, as developed on the trial, showed that the jury believed that the plaintiff was guilty of the offense charged, though the fork did not penetrate McClintock's thigh. We are satisfied that there were proofs from which the jury might find that the plaintiff was guilty as charged in the article. The substance of the article is set up in the notice, and the statement in it that the fork was run into and through McClintock's pants, instead of his thigh, would not necessarily add to or lessen the degree of the crime which was imputed to him in the article. The gist of the charge was the commission of a certain and specific offense, and of which the jury in the present case must have believed him guilty. But, aside from this, the plaintiff, by his innuendoes, says that he is charged with the crime which the defendant in his notice says he will prove to be true. It is necessary that the evidence should correspond with the allegations, so as to identify the special slander set up. *Evarts* v. *Smith*, 19 Mich. 55. But it is not necessary to prove the exact words. *Irish Am. Bank* v. *Bader*, 59 Minn. 329. In *Hay* v. *Reid*, 85 Mich. 296, this court held that a charge that the marshal permitted gambling to be carried on before his very eyes was justified by proof that he knew that gambling was going on in a certain room in a building while he was in the same building, and knew where the room was located. See, also, *Morrison* v. *Harmer*, 3 Bing. N. C. 759; *Edwards* v. *Knapp*, 97 Mo. 432.

2. It is claimed that it was the duty of the court to

instruct the jury that the words "held for trial" meant held for trial in the circuit court, and not held for examination. If the court was in error in this respect, the plaintiff is in no position to complain of the ruling. The gist of the charge, as we have already stated, was whether plaintiff was guilty of the offense set out in the article. Upon a fair charge upon the merits of that question, the jury have substantially found that the plaintiff was guilty. Under these circumstances, he could not have been prejudiced by the ruling. It could not matter whether he was held by the justice for examination, or bound over for trial. The gist of the action was the crime charged, and of this portion of the charge it was that he was in custody to answer to the charge. *Bailey* v. *Kalamazoo Publishing Co.*, 40 Mich. 255.

3. One other question only need be noticed. The record returned into this court shows that the court charged the jury that—

"It is the duty of a newspaper to gather up their news, and in so doing they are compelled to depend upon information that comes to them. If they act honestly and fairly as to the sources of the reliability of their information, then they are excused, so far as malice and exemplary damages, or any damages, are concerned, if they publish a false thing, and they do it with a good intention."

It is contended that the court was in error in including in this statement the words "any damages." If the court used the words in the connection set forth, it was clearly error; but the plaintiff, in his assignment of error, quotes the whole of that part of the charge above given, except the very words of which he complains,—that is, he leaves out of his assignment of error the words "any damages." The charge, with these words eliminated, is not erroneous, and the question is not raised under the assignment of error. From the whole charge, and the assignment of error leaving out the words "any damages," we are inclined to think that by some oversight the words are put into the record, and were not in the charge as given to

the jury. Certainly, the error would have been too patent to escape notice, and assignment of error upon it.

The case seems to have been fairly tried, and the charge to the jury fully set out the claims of the respective parties with great clearness and fairness. While we have not discussed all the claims made, we have given them consideration, and find no errors which call for reversal.

The judgment must be affirmed.

The other Justices concurred.