## STATE OF IOWA v. C. C. HEACOCK, Appellant.

Libel: INDICTMENT. An indictment for libel, charging that the writing was printed and circulated to injure prosecutor "and others," and that it tended to provoke prosecutor "and others" to wrath, etc., where it clearly shows that the alleged libel was directed against prosecutor and was designed to provoke him to wrath, is not defective, since the words "and others" are surplusage.

COURT AND JURY. An instruction in a prosecution for libel that the jury, in exercising the authority conferred upon them by Code, 1873, sections 4102, 4438, to determine the law as well as the facts, should reflect whether from their habits of thought, their study and experience they were better qualified than the court to judge of the law, and that they should not reject the court's view of the law, unless they have a deep and confident conviction that the court is wrong and they are right, is proper.

SAME. It is the duty of the court to instruct the jury in a prosecution for libel in regard to the law, notwithstanding the authority con_ ferred upon them by Code, 1873, sections 4102, 4438, to determine the law as well as the facts.

SAME. The authority conferred upon the jury in prosecutions for libel by Code, 1873, sections 4102, 4438, to determine the law as well as the facts does not require them to determine all legal questions which may arise on the trial, e. g , the sufficiency of the indictment, the qualifications of jurors and the admissibility of evidence, but only such matters as they may consider in deliberating upon a verdict.

EVIDENCE. It is competent in a prosecution for libel to introduce so much of the copy of the paper in which the libel was published, in addition to the portion showing the libelous article, as is necessary ·with other evidence to show that it was a paper published by defendant.

SAME. It is not competent for defendant in a criminal case, whose veracity has not been attacked, to show his reputation for truth ·and veracity, but it is permissible to show his general good character or reputation as to the trait involved in the charge against him.

SAME. It is not competent for defendant charged with libel to testify that the article in controversy "is true in every particular" where from the nature and scope of the article such testimony would necessarily be his conclusion and not a statement of facts within his knowledge.

SAME. The testimony of defendant charged with libel as to what he meant by the article in question is properly excluded where the language of the article is not ambiguous.

HARMLESS ERROR. The exclusion of a question on the cross-examination of the prosecutor in a trial for libel tending to elicit a conversation between him and a third person showing bias against the defendant, is not reversible error where the latter testified to the conversation, since a denial by the prosecutor that he made the statements showing bias would not have laid a foundation for contradicting him on that point and thus impeaching him as a witness.

IMPEACHMENT.    The answer of a witness to questions asked on cross-examination to show his bias cannot be contradicted by other witnesses.

SUBSEQUENT LIBEL.    Articles published by defendant charged with libel, subsequent to that on which the indictment is based may be competent for the purpose of showing the motive prompting the article in question.

**Instructions Construed. Together.**   A charge that, "Before you will be justified in convicting defendant. the state must have satisfied you and from the evidence of the truthfulness," etc., without mentioning reasonable doubt, is cured where the next paragraph of the charge defines reasonable doubt, and states that the defendant must be acquitted if the jury are not satisfied of his guilt beyond a reasonable doubt.

**Misconduct of Judge.**   An editor charged with criminal libel defended himself on the trial, though not a lawyer. He offered in evidence the minutes of the testimony before the grand jury. The court inquired if he intended to show that the evidence of the prosecutor was false, and that prosecutor knew it to be false when given, which he answered in the affirmative, and the court said, "It is a little dangerous, if you do not succeed," and admitted the papers. After the evidence in the case was submitted, the minutes were excluded on the ground that 'they had not been contradicted according to the offer. *Held*, that the court's remark was not prejudicial.

**Appeal: CHANGE OF VENUE.**   An application for a transfer of a cause to one or the other judges of the district for trial, on the ground that the judge to whom the application is addressed is prejudiced against the defendant to such an extent that he cannot obtain a fair and impartial trial before him, is addressed to the sound discretion of the judge and his decison will not be disturbed on appeal in the absence of the abuse of such discretion.

OBJECTION BELOW.    The objection that the introduction in evidence of the entire copy of the newspaper in which the alleged libel was printed was error cannot be urged on appeal, where the objection in the trial court to such evidence was based on an entirely different ground.

*Appeal from Washington District Court.*—HON. A. R. DEWEY, Judge.

FRIDAY, OCTOBER 7, 1898.

THE defendant was convicted of the crime of libel, and from the judgment, which required that he pay a fine of six

hundred dollars and costs, and that he stand committed to the county jail until the fine should be paid, he appeals.— *Affirmed.*

. . *C. C. Heacock, M. W. Bailey* and *H. & W. Scofield* for appellant.

*Milton Remley,* Attorney General, *W. S. Brookhart,* County Attorney, and *Jesse A. Miller* for the State.

ROBINSON, J.—The defendant publishes at Brighton a newspaper known as the *"Brighton Enterprise."* The alleged libel consists of an article prepared by the defendant, and published by him in his paper, entitled "Impeached Impeachers." The article purported to give an account of a trial in justice's court, to which Heacock was a party, and which involved the ownership of a harness and buggy. The defendant testified as a witness in his own behalf, and the article states that one A. J. Johnson, commonly called "Doc" Johnson, and two others, who are referred to as Hen Jordan and Tom Pierce, testified for the purpose of impeaching the defendant as a witness. The article mentions Jordan and Pierce in disparaging terms, and then refers to Johnson in language which the jury was fully authorized to find libelous. The indictment charges that the article was maliciously and willfully inserted in the *Brighton Enterprise* by the defendant, and that it was willfully and maliciously circulated and distributed by him, "for the purpose of defaming, injuring and vilifying the person and character of A. J. Johnson and others, and the same tended to provoke the said A. J. Johnson and others to wrath, and to expose them to public hatred, contempt, and ridicule, and to deprive them of the benefits of public confidence and social intercourse. * * *"

I. After the defendant was arraigned, he filed an application, verified by himself, for a transfer of the cause to one

of the other judges of the district for trial, on the ground that the judge to whom the application was addressed was "prejudiced against the defendant to such an extent that he cannot obtain a fair and impartial trial before him." An application of that character was to be granted or refused by the court, in the exercise of a sound discretion. We do not find anything in the record which shows an abuse of the discretion which was vested in the court.

II. It is claimed that the indictment is defective in not being direct and certain as to the offense charged and the particular circumstances of the offense. This claim is founded upon the fact that the indictment contains the words "and others," following the name of Johnson, in two instances, thus charging the defendant with the alleged libel, for the purpose of defaming, injuring, and vilifying "A. J. Johnson and others," and that it "tended to provoke the said A. J. Johnson and others to wrath," etc. Section 4306 of the Code of 1873, in force when this cause was tried, provided that no indictment was insufficient "for any surplusage or repugnant allegation, or for any repetition, when there is sufficient matter alleged to indicate clearly the offense and the person charged." The words "and others" were, at most, mere surplusage. The indictment showed clearly that the alleged libel was directed against Johnson, and was designed to provoke him to wrath, and to expose him to public hatred, contempt, and ridicule, and to deprive him of the benefits of public confidence and social intercourse. Prejudice could not have resulted to defendant from the improper use of the words in question. And that is true of the fifth paragraph of the charge, in which reference is made to the publication of the article in controversy "with the malicious intention of injuring the parties referred to" in the indictment. The subsequent portions of the paragraph required the jury, in order to convict, to find that the malicious intent of the defendant had especial reference to Johnson.

III.   For the purpose of showing different articles published in the *Brighton Enterprise,* the state was permitted to introduce in evidence all of each copy of the paper which contained the article which was desired for use. The appellant insists that only so much of each copy as showed the desired article contained therein should have been received. It was necessary to introduce so much of each copy as was necessary, with other evidence, to show that it was a paper published by the defendant. What, if anything, appeared in the copies in addition to the articles desired as evidence is not shown. Moreover, we are of the opinion that the appellant cannot rightfully complain of the admission of the copies in evidence, for the reason that his only objection thereto was stated in words as follows: "Defendant objects to any of the papers except the first one, the copy containing the libel; objects to all other papers published after." All of the copies were offered together, and it will be observed that the defendant failed to state any ground of objection to them. If it can be said that the objection was based upon the theory that publications made after the alleged libel appeared were immaterial, the answer is that the subsequent articles tended to show the motive with which the first one was published, and were competent evidence for that purpose.

IV.   Johnson was a witness for the state, and on cross-examination was asked if he did not say to one La Mott, at a time and place specified, that if the defendant were lying in a ditch, drowning, and he could save him by reaching out his hand, he would not do so, but would let the defendant drown. An objection to the question was sustained, and of that ruling the appellant complains. The question was probably asked to show the bias of the witness. If it was competent for that purpose, and an answer thereto should have been permitted, the error was without prejudice, for the reason that La Mott afterwards testified that Johnson did say to him what the question suggested, and his testimony was not contradicted. It is said, however,

that an answer should have been required of Johnson, in order that, if he had denied making the statement inquired for, he might have been contradicted by other witnesses; but that would not have been permissible practice. *State v. Townsend,* 66 Iowa, 741. Johnson was also asked on cross-examination in regard to a statement alleged to have been made by him to one White, respecting the testimony of one Buck in some proceedings had in Keokuk. The defendant stated that his purpose in asking the question was to show, if the witness denied the statement, that he had actually made it. Thereupon the court very properly sustained an objection to the question. White was offered by the defendant as a witness, and stated that Johnson had made to him the statement to which the question referred. His testimony upon that point was then stricken from the record. It was clearly irrelevant to any issue in the case, and immaterial, and the court did not err in striking it out.

V.   The defendant attempted to show his reputation for truth and veracity in the neighborhood where he resided; his "character as to being malicious, vindictive, and very resentful;" whether he was a "square-dealing, honorable man;" his reputation as a "vindictive and fighting citizen;" his reputation, as editor of the *Enterprise,* "in exposing frauds, fraudulent fakes, or fakirs that may come into the community;" and similar matters. Objections to such questions were sustained. Nearly all of the questions were so manifestly improper as to form or subject-matter of the inquiry as to make any comment upon them unnecessary. The reputation of the defendant for truth and veracity had not been questioned, and was not in issue, and proof that his reputation was that of a truthful man would not have tended to show that he was guiltless of the offense charged. It is always permissible for a defendant in a criminal action to show his general good character or reputation as to the trait involved in the charge against him. *State v. Kinley,* 43 Iowa, 294. But character or reputation must be

shown. by competent evidence, and according to well-established rules of practice, which need not be repeated here. We do not find any error in the rulings respecting the introduction of evidence, of which the appellant can justly complain. It may be said in this connection that the appellant was not represented by an attorney in the district court, but conducted the defense in his own behalf. He is not an attorney, but that fact does not excuse his failure to observe the settled rules of procedure which govern the trial of causes.

VI. The defendant introduced in evidence the minutes of the testimony in this case taken by the grand jury. When they were offered, the court asked if the defendant expected to prove what Johnson testified to before the grand jury, and, being answered in the affirmative, the court then asked if the defendant intended to show that the testimony so given was not true, and that Johnson knew it was not true when he gave it, and, again being answered in the affirmative, the court said: "It is a little dangerous, if you do not succeed. You may produce the papers." The minutes were then offered and read. When the evidence in the case had been fully submitted, the state moved to exclude the minutes as evidence on the ground that no evidence had been given which tended to show that the testimony of Johnson before the grand jury was false, or that he knew it to be false when given, and the motion was sustained. The appellant complains of the remark of the court respecting the danger of introducing the minutes, if Johnson's testimony was not shown to be false, and states that, as the ruling on the motion to exclude the minutes showed that in the opinion of the court Johnson's testimony had not been shown to be false, the remark must have been prejudicial. The remark appears to have been made in the interest of the defendant, and may well have been prompted by his evident inexperience in the work he was attempting to do. There was nothing in the remark of the court which indicated its view of the value of the minutes as testimony. The minutes tended to show

the guilt of the defendant, and to offer them without showing that the statements they contained were false would naturally be prejudicial to the defendant by strengthening the case against him. We do not think the remark of the court was improper, in view of the circumstances under which it was made, nor that it could have been prejudicial.

VII. The court excluded as evidence a statement of the defendant that the article in controversy "is true in every particular." Since, from the nature and scope of the article, this answer was necessarily a conclusion of the witness, and not a statement of facts within his knowledge, the answer was properly excluded. The defendant was then asked to explain the article,—to state what he meant by it; but an objection to the question was sustained. The guilt of the defendant was to be determined by the article itself, and the meaning which would naturally be attributed to the language used therein, and not be an unexpressed meaning, unknown to the readers of the article. The language of the article was not ambiguous. We think the defendant's explanation was properly excluded.

VIII. The court charged the jury that, "before you will be justified in convicting the defendant, the state must have satisfied you and from the evidence of the truthfulness" of all the material allegations which had been recited. This, taken alone, would have been erroneous, because it omitted the element of reasonable doubt. But in the next paragraph the jury was instructed as to what constitutes a reasonable doubt, and told, in effect, that it must acquit the defendant if not satisfied of his guilt beyond a reasonable doubt. The term "reasonable doubt" was also used in another paragraph of the charge, but the appellant complains that, as it was not used in direct connection with the portion of the charge quoted, nor in seven of the nine paragraphs into which the charge was divided, the jury may not have understood the proper application of what was said in regard to a reasonable doubt. But we think this criticism is not well founded.

The charge was to be taken as an entirety, and, when so considered, was not misleading.

IX.    The court charged the jury as follows: "Our law provides that in all prosecutions for libel the jury, after receiving the direction of the court, shall have the right to determine, at their discretion, the law and the fact.   In construing this law, you are instructed to review carefully the whole case, looking to these instructions for the law, and to the evidence for the facts, and after * * * both and all, then with a rigid regard for the rights of the people and those claimed to be injured on the one hand, and as rigid and watchful care for the rights of the defendant on the other, seek to determine the truth of the issue.   As to the right of the jury to determine the law and the fact, you are instructed that if the jury can say on their oaths that they know the law better than the court does, they have the right to do so, but before assuming so solemn a responsibility they should be sure that they are not acting from caprice and prejudice, that they are not controlled by their will or their wishes, but from a deep and confident conviction that the court is wrong, and that they are right. Before saying this on their oaths, it is their duty to reflect whether, from their habits of thought, their study and experience, they are better qualified to judge of the law than the court. If, under all these circumstances, they are prepared to say that the court is wrong in its exposition of the law, the statute has given them that right."   Section 4102 of the Code of 1873 provided that "in all indictments or prosecutions for libel, the jury, after having received the direction of the court, shall have the right to determine at their discretion the law and the fact."   Section 4438 provided that "on the trial of an indictment for a libel, the jury have the right to determine the law and the fact."   The "direction of the court" referred to in section 4102 is the instruction or charge of the court to the jury.   *Forshee v. Abrams,* 2 Iowa, 571, 580.   And the jury will be so far presumed to have followed the charge of

the court that an erroneous instruction will be ground for a new trial. *State v. Rice,* 56 Iowa, 431. The authority conferred by the sections which we have cited, and by similar statutes and constitutional provisions, does not require that the jury determine all legal questions which may arise on the trial, as the sufficiency of the indictment, the qualification of jurors, and the admissibility of evidence; but only such matters as it may consider in deliberating upon a verdict. *Drake v. State,* 53 N. J. Law, 23 (20 Atl. Rep. 747); *Anderson v. State,* 104 Ind. 467 (4 N. E. Rep. 63, and 5 N. E. Rep. 711); *Thibault v. Sessions,* 101 Mich. 279 (59 N. W. Rep. 624). And notwithstanding the fact that the jury has the right to determine the law of the case within the limit stated, it is the duty of the court to instruct the jury in regard to the law. *State v. Syphrett,* 27 S. C. 29, (13 Am. St. Rep. 616, 2 S. E. Rep. 624); *State v. Armstrong,* 106 Mo. 395 (27 Am. St. Rep. 361, 16 S. W. Rep. 604); *Drake v. State, supra; Anderson v. State, supra; In re Lowe,* 46 Kan. 255 (26 Pac. Rep. 749); *State v. Verry,* 36 Kan. 416 (13 Pac. Rep. 838); *People v. McDowell,* 71 Cal. 194 (11 Pac. Rep. 868); 2 McClain Criminal Law, section 1070. The weight which the jury should give to the charge of the court has been a subject of much discussion, many authorities holding that the jury has no moral right to return a verdict which is not sanctioned by the charge. See *Com. v. McManus,* 143 Pa. St 64 (21 Atl. Rep. 1018, and 22 Atl. Rep. 761); *State v. Tally,* 23 La. Ann. 677. But the legal right of a jury, in a criminal prosecution under the sections quoted, to determine the law which should govern the verdict, even though a decision in conflict with the charge of the court be reached, cannot be doubted. The sections gave to the jury in such cases not merely the power, but the right, to make such a decision; and the jury was not required to follow the charge of the court, which must be regarded as advisory, and not conclusive as to the duty of the jury. *State v. Armstrong, supra; Kane v. Com.* 89 Pa. St. 52; *State v. Zimmerman,*

31 Kan. 85 (1 Pac. Rep. 257); *In re Lowe,* 46 Kan. 255 (26 Pac. Rep. 749); *Hudleson v. State,* 94 Ind. 426. Did the portion of the charge under consideration. correctly instruct the jury in regard to its right? The statute said that the jury had "the right to determine, at their discretion, the law and the fact." That gave to it freedom to act according to its own judgment as enlightened by the charge of the court. The jurors were charged, in effect, that before they could act upon their own judgment, in opposition to that of the court, they must say, under the sanction of their oath, that they knew the law better than did the court. It was certainly proper to caution the jurors against acting from caprice or prejudice, or from considerations personal to themselves, and to call their attention to their own habits of thought and study, and to their experience, as tending to show the probable accuracy and value of their judgment regarding the law, as compared with the probable accuracy of the opinion of the court and the weight which should be given to it. To require them to be able to say that they knew the law better than did the court, merely called their attention, in an impressive manner, to the decision which would necessarily be implied in thus reaching a conclusion in conflict with the opinion of the court, and tended to require of them greater care to reach a correct verdict. A similar instruction has been approved by the supreme court of Illinois under a statute which provides that "juries in all criminal cases shall be judges of the law and fact." See *Spies v. People,* 122 Ill. 1, 152 (12 N. E. Rep. 865, and 17 N. E. Rep. 898). Other portions of the charge are criticised, but, we think, without sufficient grounds.

X. It is urged that the fine imposed by the court is excessive. We do not think the record sustains that claim. The article in question was grossly libelous. That it was prepared and published maliciously is clearly shown, and nothing in mitigation of the offense appears in the record. It is true that the law of this state guarantees freedom of speech and liberty of the press, but that freedom and that liberty

must be exercised with due regard for the rights of all people. The publication of the article in controversy was a willful violation of the law, and we cannot say that the punishment imposed is excessive. The judgment of the district court is AFFIRMED.