14551

MILAM v. RAILWAY EXPRESS AGENCY, INC.

(193 S. E., 324)

*Messrs. Benet, Shand & McGowan,* for appellant, cite:

*Messrs. Gary Paschal* and *John W. Scholenberger,* for respondent, cite:

October 25, 1937.

The opinion of the Court was delivered by MR. CHIEF JUSTICE STABLER.

This is an action for damages on account of an alleged libelous statement written and published by the defendant of and concerning the plaintiff and his business. The appeal is from an order of the County Judge granting a new trial.

It appears that on September 14, 1936, a servant of the defendant went to Milam's place of business in the City of Columbia to deliver a C. O. D. package which had been shipped the plaintiff by the Majestic Metal Spinning & Stamping Company, Brooklyn, N. Y. It was discovered that the funds in the cash drawer were not sufficient to make the payment required, $23.52, and, as the plaintiff himself, the only one who could sign checks, was not present, the "package was not taken up at that time." On the following day the defendant, acting through its agent, A. D. Cobb, addressed and mailed to the consignor, and was duly received by it, a postal card containing the following notation with reference to the package in question : "Is undelivered :—Reason. No funds." The complaint contains, among others, the following allegations :

"That in and by the printed statement above mentioned and the publication thereof and the circumstances attending and surrounding the same, the defendant's purpose and intention was to charge and convey and did charge and convey to the public and the Majestic Metal Spinning and Stamping Company, that the plaintiff was without sufficient funds to take up the 'C. O. D.' package referred to.

"That the statements and the implications contained in the above-mentioned card were absolutely false and libelous and the writing and publication thereof by the defendant, its agents and servants were done in a negligent, wanton and willfully reckless manner in total disregard of the rights of the plaintiff, his good name and reputation as an individual and as a business man."

The defendant alleged that in making its report to the consignor it "had no intention of attacking the credit or financial solvency of the plaintiff and that the language used did not do so." Also, that what it did was in performance of a legal duty which it owed the shipper, and that the statement "was made without malice, in good faith and was privileged."

On trial, the defendant's agent, over objection of the plaintiff, was allowed to testify as follows:

"Q. Mr. Cobb, when you used the expression on this card, which is in evidence, 'Is undelivered: Reason: No funds,' what was in your mind that you tried to express by that statement? A. I simply meant that no funds were there at the time the driver attempted to deliver it. I had no intention of meaning anything else.

"Q. Did you mean that he was bankrupt? A. Absolutely not.

"Q. Did you mean that he was embarrassed financially? A. I certainly did not.

"Q. As you stated, just when that package was presented the funds were not present with which to take it up, is that correct? A. Absolutely."

The case was submitted to the jury and a verdict was returned in favor of the defendant. Plaintiff's motion for a new trial was granted upon the ground that the Court committed error in permitting Cobb, defendant's agent, to testify—as above set out—as to his meaning and intent in writing "No funds" upon the postal card which was mailed by the defendant to the consignor of the shipment. Two contentions are made by the appellant: (1) That the testimony obpected to was proper and admissible and that Judge Holman, in passing upon the motion for a new trial, erred in holding otherwise; and (2) that, even if error, the admission of this testimony did the plaintiff no harm.

We think a new trial was properly granted. In *Oliveros v. Henderson*, 116 S. C., 77, 106 S. E., 855, Syllabus 3 correctly states the holding of the Court,

as follows: "In determining whether words are libelous or slanderous, they must be given their ordinary pouplar meaning, unless the defendant, at the time such words were used, so modified or explained them as to give them a different meaning."

In 17 R. C. L., 411, the writer says: "And it has ■ been held that a defendant cannot be allowed to state that, in the article published, he did not intend to charge the plaintiff with the offense involved in the words uttered, where the article in question was not ambiguous, since, in such a case, he must be held to have intended the meaning which the word used obviously conveyed."

Also in 37 C. J., 72: "To sustain a defense that ■ words which in their ordinary meaning are actionable were used in a non-actionable sense, there must be sufficient evidence of surrounding circumstances or explanations accompanying the words such as to induce the hearers or readers to understand that an innocent meaning was intended."

In the case at bar, the language used by the defendant was not ambiguous; and, while this Court has never directly passed upon the question here presented, it has been held in other jurisdictions that the testimony of the person charged with the publication of a libelous article, as to what he meant by what he wrote, where the words used are not ambiguous, is inadmissible. The question is not what the writer intended such words to mean, but what meaning, when considered in their ordinary and popular sense, did they convey to the reader of the publication.

In *State of Iowa v. Heacock,* 106 Iowa, 191, 76 N. W., 654, 657, the defendant was charged with having written and published a libelous article concerning one Johnson and others. On trial he was asked to state what he meant by the article; but an objection to the question was sustained. On appeal, the Iowa Supreme Court said: "The guilt of the defendant was to be determined by the article itself, and the meaning which would naturally be attributed to the language

used therein, and not by an unexpressed meaning, unknown to the readers of the article. The language of the article was not ambiguous. We think the defendant's explanation was properly excluded."

*Hay v. Reid,* 85 Mich., 296, 48 N. W., 507, 511, was an action for libel. The Court held: "It was proper for the defendant to state that he had no ill will against the plaintiff when he made the publication, and that he had no other motive in such publication than the public good. But it was error to allow him to state that in the article he did not intend to charge the plaintiff with the commission of any crime or misdemeanor. The article was not ambiguous, and defendant must be held to have intended the meaning that his words obviously conveyed." See, also, *Wilson v. Noonan,* 35 Wis., 321.

In the case before us, counsel for the appellant argue that the testimony was admissible to show that the publication was without malice. Even if this is conceded to be true, it is not made to appear that the testimony was sought to be introduced for such purpose, and such purpose alone, but as an explanation of what the defendant meant when Cobb made the notation on the card of "No funds." This, as the words used were unambiguous, was not permissible. The first assignment of error, therefore, is held to be without merit.

As to the second contention, we cannot say that the admission of the testimony in question was not prejudicial to the plaintiff. In the circumstances shown, it may have influenced the jury to some extent in reaching their verdict.

The judgment of the Court below is affirmed, and the case remanded for a new trial in accordance with the order of the County Judge.

MESSRS. JUSTICES BONHAM, BAKER and FISHBURNE concur.

MR. JUSTICE CARTER did not participate on account of illness.