[No. 31944.   Department One.   April 24, 1952.]

JOHN H. LYNCH, *Appellant*, v. REPUBLIC PUBLISHING COMPANY, *Respondent*.[1]

[1]Reported in 243 P. (2d) 636.

*J. P. Tonkoff,* for appellant.

*Halverson & Applegate* and *Jack M. King,* for respondent.

DONWORTH, J.—Plaintiff instituted this action to recover both general and special damages from the defendant because of the publication of an allegedly libelous editorial. A trial before the court sitting with a jury resulted in a verdict for defendant. Plaintiff's motion for a new trial having been denied, a judgment of dismissal was entered from which plaintiff has appealed.

For eighteen years prior to 1950, appellant had been elected and re-elected as justice of the peace and had been appointed municipal court judge or police judge in Yakima, a city of the first class. On September 10, 1950, he was a candidate for re-election as justice of the peace and was one of three candidates running for two positions at the primary election to be held September 12, 1950.

Respondent is the owner and publisher of the Yakima Morning Herald, a daily newspaper published in Yakima. On September 10, 1950, it published in its Sunday Herald an editorial which reads as follows:

"FOR BETTER JUSTICE

"This page strongly recommends the election of David Rankin and Norman R. Nashem, Jr., and the defeat of John H. Lynch as justices of peace and police judge in Yakima. The three are running for two positions on the non-

partisan judicial ballot. Mr. Lynch, as with Mr. Rankin, is an incumbent asking for re-election. *But Mr. Lynch, notwithstanding his qualities of personal integrity, has repeatedly demonstrated his disqualifications as a judge. And this conclusion is concurred in by all responsible members of the bench and bar who have observed the mismanagement of Mr. Lynch's court.*

"Mr. Lynch persists in exiling confessed and convicted miscreants, sending them on their way with suspended sentences and fines to become burdens for other communities. We have pointed out many times that this silly business multiplies the problems of law enforcement in all communities; and if all courts in surrounding towns, counties and states were to practice it, Yakima could become a catch basin for hordes of petty crooks, drunks and vagrants.

*"Mr. Lynch has used his court as a collection agency for the settlement of civil damages resulting from traffic accidents.* He has done this simply by holding suspended fines and jail terms over defendants, contingent upon them making what Mr. Lynch considers 'meet and due' restitution or reparations to allegedly injured parties. Although technically within the prerogatives of police court, such procedure violates the purposes for which police court exists. It is plainly not the judge's business to adjudicate civil damages in disposing of criminal actions. Such practice ignores the court's sole responsibility to determine criminal liability and to assess punishment in terms of the extent and seriousness of the crime. It takes no account of corollary conditions that may have contributed to the extent of civil damages incurred. And it passes on to the police department duties and obligations which are foreign to its primary responsibilities. The results of such nonsense serve neither justice nor equity.

· *"Finally, Mr. Lynch has not and does not assure fair and just treatment for defendants appearing in his court. Accused persons have not been given full and prompt opportunity to enter a plea. And, at times, they have not been fully and adequately informed of their rights.*

"These conditions have bothered the legal fraternity here as a whole. And they have inspired strong opposition to Mr. Lynch by Yakima's last two city attorneys, who watched the functioning of police court from the inside, as the prosecuting arm of the city itself.

*"The abuse of the rights of defendants, the improper use of judicial authority and the arbitrary banishment of petty*

*criminals have incurred the wrath of lawyers and ex-judges,* many of whom have discarded precedent to oppose Mr. Lynch openly.

"We have no quarrel with Mr. Lynch as a long-time and respected citizen of the Yakima valley. And we regret having to take such strong issue with his effort to remain on the bench. But Mr. Lynch has refused to heed the sincere and professional suggestions for the proper conduct of his court. *He has been capricious and stubborn in pursuing practices which mock tested and traditional judicial procedures. And he has forfeited his claim to any further public confidence as an officer for a court of law for this community.*

"We recommend Mr. Lynch's defeat." (Italics ours.)

Appellant was defeated at the primary election held September 12, 1950, and instituted this action October 9, 1950. He alleged his good reputation, that he had been reelected justice of the peace for many years and had served as municipal court judge, that respondent had knowingly, wilfully and maliciously published the editorial, and that it was false and untrue and was particularly so in the respects which we have italicized.

In addition to allegations as to his general damage by reason of embarrassment, humiliation and ridicule and contempt to which he had been subjected, appellant further alleged that except for the publication of the editorial he would have been re-elected.

He prayed for $50,000 general damages and for $16,080 special damages consisting of his loss of salary as justice of the peace and municipal court judge for the ensuing four year term.

Respondent moved to strike certain portions of the complaint and its motion to strike the allegations as to special damages was granted.

In its amended answer, respondent admitted publishing the editorial, denied the other material allegations of the complaint and set up two affirmative defenses: (1) truth and (2) "fair, reasonable and just comments and criticisms of the plaintiff as a public official."

Appellant's motion to strike the defense of fair comment or privileged criticism was granted and the cause was tried on the sole issue as to the truth, or falsity, of the statements contained in the editorial.

Respondent does not urge in this court that it should have been accorded the defense of fair comment or privileged criticism, and the correctness of the trial court's action in striking that defense is not in issue upon this appeal.

During the course of the trial, some five hundred police court docket sheets were admitted in evidence over appellant's objection as to their materiality. These exhibits revealed that in many instances sentences imposed by appellant as police judge had been suspended by him in whole or in part either upon condition that the particular defendant leave the city or county of Yakima or the state of Washington for a specified term of years. In a number of traffic cases appellant had suspended sentence on the condition that the defendant make reparation to the other party concerned in a traffic accident for damage resulting therefrom.

Twenty-two attorneys, practicing in the city of Yakima, were called by respondent and testified (with one exception) that in their opinion appellant was not competent to hold the position of police judge.

All of these witnesses were asked substantially the same question, similar to the following:

"Q. Based upon your knowledge and your experience as a practicing lawyer, and based upon your appearances as an attorney in Judge Lynch's police court, and based upon the observations that you have made there at that time, was Judge Lynch, in your opinion, on or about September 10, 1950, and for some time prior thereto, properly qualified and competent and a proper person to hold the position of police judge? A. In my opinion he was not competent."

The foregoing testimony was admitted by the court over appellant's objection.

These witnesses were then asked to state their reasons for their opinion. The reasons given consisted in large part

of generalized statements as to their observations of appellant's conduct of his court.

All but four of the attorney witnesses were asked a question substantially as follows and gave the following answer:

"Q. There are certain conclusions stated in that editorial, and I will ask you to state whether or not you concur with the conclusions stated in the editorial? A. I do concur."

Appellant objected, except in a few instances, to the foregoing question. His objections were overruled by the trial court.

Approximately one half of the attorney witnesses were asked the following question and gave the following answer:

"Q. I will ask you to state whether or not you believe that editorial to be substantially true? A. I do."

Appellant objected to the foregoing question in only three or four instances. His objection was each time overruled.

At the close of the evidence, the trial court gave the jury forty-eight instructions concerning the law applicable to the case. The court instructed that the editorial complained of was libelous *per se*, which meant that it was presumed to be false and that the burden of proving its truth rested upon respondent. The court also gave several instructions relative to the duties and responsibilities of appellant as justice of the peace and police judge in the conduct of his court.

Appellant has set forth in his brief twenty assignments of error of which thirteen are directed to certain instructions given to the jury and to the court's failure to give certain requested instructions.

We shall now consider appellant's first assignment of error: that the court erred in striking the allegations in appellant's complaint as to special damages based on his loss of salary for the ensuing term of office.

Argument on respondent's motion to strike these allegations was had before the Honorable Dolph Barnett, who stated in his memorandum opinion that the motion to strike should be granted for the reason that "obviously it would be impossible to establish that plaintiff's defeat was attributable to the article." Judge Barnett relied principally

upon *Otero v. Ewing,* 162 La. 453, 110 So. 648, 56 A. L. R. 249, in reaching his conclusion.

We believe the court was correct in striking the item of special damages claimed by appellant. He was defeated for the position of justice of the peace by a substantial margin of votes. To say that the editorial complained of was responsible for his defeat and to ignore the many other factors which enter into a political campaign would be to speculate in a very considerable degree. Furthermore, even if he had been elected, can we say with any certainty that the mayor would have again appointed him as police judge? The evidence showed that there was substantial opposition to appellant's election on the part of members of the Yakima bar. The jury, therefore, would be called upon to speculate further as to whether appellant would have been appointed as police judge even if he had been elected justice of the peace.

No verdict for appellant which included special damages could have been allowed to stand under the circumstances of this case because it could have rested only upon speculation. It was therefore not error for the court to strike the element of special damages. Other cases so holding are *Field v. Colson,* 93 Ky. 347, 20 S. W. 264; *Taylor v. Moseley,* 170 Ky. 592, 186 S. W. 634.

Next, appellant complains that the court erred in admitting in evidence over appellant's objection the exhibits consisting of police court docket sheets heretofore mentioned. Appellant argues that this evidence was not material for the reason that Rem. Rev. Stat., § 2280, authorized appellant as police court judge to suspend fines and sentences on conditions which he believed appropriate to the merits of each case. In support of his argument, appellant cites our decisions in *State ex rel. Pence v. Koch,* 173 Wash. 420, 23 P. (2d) 884, and *State ex rel. Graham v. Willey,* 168 Wash. 340, 12 P. (2d) 393, wherein we held that the provisions of Rem. Rev. Stat., § 2280 [P.P.C. § 112-3], apply to a justice of the peace court. He further reasons that Rem. Rev. Stat., § 8993 [P.P.C. § 151-31], reading in part as follows:

"The police judge so appointed, in addition to his powers as justice of the peace, shall have exclusive jurisdiction over all offenses defined by any ordinance of the city, . . . ."

confers power upon a municipal court judge to suspend sentences upon a condition imposed by him.

█ Assuming, without deciding, that appellant had power as police court judge to suspend sentences upon conditions determined by him, we nevertheless conclude that appellant's objections to admission of the exhibits are without merit. As pointed out by respondent, the issue was not whether appellant had the right to so suspend sentences; it was whether or not he *did so* in the manner stated in the editorial. It was conceded therein that such practice was "technically within the prerogatives of police court," but under the issue of truth the burden was upon respondent to prove that appellant had suspended sentences conditioned as stated in the editorial.

*Cooper v. Illinois Publishing & Printing Co.*, 218 Ill. App. 95, is a libel case closely in point. The defendant there published an article stating that the plaintiff, a judge, was unfit to hold office, that his sympathies were with criminals, that he hampered the prosecution and made convictions in sex cases impossible, and that he, as judge, was a menace to young girls. Exceptions were taken to the refusal to admit testimony relevant to what occurred at trials of sex cases. Upon this question the court said:

". . . It is our opinion that an offer of any evidence of what transpired in the trial of any sex case was competent.

"It may be anomalous that it should ever become necessary, even in a libel suit such as this, to present to a jury of laymen the question of the fitness or unfitness of a judge; but we know of no other method whereby that subject may properly be litigated between the parties. That, then, being the case, we are bound in such a trial as this to apply the ordinary rules of evidence, and at the same time recognize the difficulties which necessarily beset both the plaintiff and the defendant when presenting evidence undertaking to prove the falsity or truth of the alleged libel. If the position of counsel for the plaintiff were correct then a judge might be guilty of flagrant misconduct, violate every law, and yet,

if a newspaper published the actual facts and was then sued for libel by that judge, practically, there would be no defense and in such a case the plaintiff would be entitled to a directed verdict in his favor at the close of his own case. Such, of course, is not the law."

See, also, *Davis v. Lyon,* 91 N. C. 444.

This documentary evidence consisting of appellant's police court docket entries was material to respondent's defense, and the trial court did not err in admitting it in evidence.

Appellant's third assignment of error is that the court erred in admitting, over appellant's objection, the testimony of the attorney witnesses that, in their opinion, appellant was not competent, qualified or a fit person to hold the position of police judge. In his argument, appellant points out that the trial court permitted twenty-one attorneys to so testify and relies upon the general rule first set forth in *Johnson v. Caughren,* 55 Wash. 125, 104 Pac. 170, as follows:

". . . that a witness must testify to facts, not opinions; that whenever the question to be determined is to be inferred from particular facts which can be readily produced before the jury, and the inference to be drawn therefrom is within the common experience of men in general, requiring no special knowledge, skill or training, the inference or conclusion is to be drawn by the jury and not the witness."

Respondent points out that appellant particularly complained of the statements contained in the editorial that

"Mr. Lynch, notwithstanding his qualities of personal integrity, has repeatedly demonstrated his disqualifications as a judge. And this conclusion is concurred in by all responsible members of the bench and bar who have observed the mismanagement of Mr. Lynch's court."

Respondent contends that it therefore had the right to call members of the bench and bar to prove that they concurred in the statement contained in the sentence first quoted. If the interrogation had been so limited, attorney witnesses would have been testifying to a fact *as ordinary witnesses.* Respondent confuses its right to introduce factual testimony to prove the truth of the second sentence quoted

with its attempt to prove by *expert opinion* testimony that the individual attorney witnesses did not believe appellant was competent to act as municipal court judge. When the attorneys were asked for their opinion as to appellant's competency and fitness as a judge, they were asked, by the form of the question, for their opinion as expert witnesses.

We conclude that it was not error to permit such opinion testimony. The ordinary and natural interpretation of the words contained in the sentence first quoted is that appellant was not fit or competent to act as a judge. Appellant was successful in having the defense of fair comment or privileged criticism eliminated. Whether the statement be considered one of fact or merely an expression of opinion, its truth was in issue, and respondent was entitled under the issues made by the pleadings to attempt to prove its truth.

In *Oyster v. Dye,* 7 Wn. (2d) 674, 110 P. (2d) 863, 133 A. L. R. 720, we said:

"It is the general rule that a proper matter for expert testimony is one the discussion of which calls for some special skill or knowledge beyond the understanding of the ordinary person."

Law is admittedly a highly technical field beyond the knowledge of the ordinary person. The competency of a judge is a question of fact upon which expert testimony should be of aid to a jury. The admissibility of expert opinion testimony is an exception to the general rule stated in the *Johnson* case, *supra.* It is not necessarily fatal to the admissibility of such testimony that it touches an issue before the jury. VII Wigmore on Evidence (3d ed.) 18, § 1921; *Metsker v. Mutual Life Ins. Co.,* 12 Wn. (2d) 618, 123 P. (2d) 347; *Patrick v. Smith,* 75 Wash. 407, 134 Pac. 1076.

Opinion testimony is admissible to prove competency to hold an office or engage in a profession. *Robbins v. Treadway,* 2 J. J. Marsh 540 (Ky.), 19 Am. Dec. 152 (capacity as judge; opinions of "honest and intelligent witnesses"); *Gray v. Mossman,* 91 Conn. 430, 99 Atl. 1062 (whether a sergeant is qualified; opinion of military expert); *Appeal of Mulhollen,* 155 Pa. Super. 587, 39 A. (2d) 283 (competency of school teacher; opinion of superintendent); *New York Life Ins. Co.*

*v. Torrance,* 26 Ala. App. 38, 153 So. 458 (skill and competency of a surgeon; opinion of medical experts).

Appellant does not contend that his competency was not a proper subject for expert testimony. There was, therefore, no error in admission of this opinion testimony.

Appellant's fourth assignment of error is somewhat related to the subject just discussed. He complains that the court erred in admitting, over his objection, opinion evidence that the editorial was substantially true.

▪ Whether all responsible attorneys in Yakima who had observed the operation of appellant's court concurred in respondent's statement that "Mr. Lynch . . . has repeatedly demonstrated his disqualifications as a judge" was an issue of fact, made such by appellant. Respondent had a right to call attorneys to testify as to whether they individually concurred in that statement. If the scope of the question had been so limited, the attorneys would not have been testifying as experts, but as ordinary witnesses testifying to the existence or nonexistence of a fact.

▪ When, however, respondent went beyond this and asked the attorney witnesses if the editorial was substantially true, it caused the witnesses to answer the very question which it was the jury's duty to determine. A witness may not be permitted to testify over objection that a libel is true. *Davis v. Hamilton,* 88 Minn. 64, 92 N. W. 512; *State v. Heacock,* 106 Iowa 191, 76 N. W. 654; *McDuff v. Detroit Evening Journal Co.,* 84 Mich. 1, 47 N. W. 671; *Bailey v. Chapman,* 15 Tex. Civ. App. 240, 38 S. W. 544.

However, no specific objection to this testimony was interposed by appellant. Since this case must be remanded for a new trial on other grounds, we deem it proper to state that upon a retrial opinion testimony that the editorial was substantially true should not be admitted over proper objection.

In his fifth assignment of error appellant contends that the court erred in allowing twenty-two witnesses to testify as experts.

▪ The number of expert witnesses who will be allowed to testify on each side of a case is a matter within the sound

discretion of the trial court and the court's ruling thereon will not ordinarily be disturbed on appeal.

We cannot say that the trial court abused its discretion in permitting the twenty-one attorney witnesses to also testify as experts in the course of their examination as nonexpert witnesses. In any event, appellant did not object on the ground that such evidence was cumulative until fourteen such witnesses had testified. The assignment of error is without merit.

In his sixth assignment of error appellant contends that the court erred in admitting two exhibits, being copies of an advertisement inserted in a Yakima newspaper by one of his opponents just prior to the 1950 primary election. This advertisement contained the statement (referring to the particular opponent who caused it to be published) "actively supported by many community leaders, including the following practicing attorneys." This statement was followed by the names of thirty-two Yakima attorneys.

If any error were committed at the time these exhibits were admitted, it was later cured when appellant's opponent for office testified, without objection, that all attorneys listed therein had authorized him to so use their names in support of his candidacy for the office of justice of the peace.

Appellant complains in his seventh assignment of error that the court erred in admitting certain testimony of E. F. Velikanje, one of the attorney witnesses. Without reviewing this testimony in detail, it will suffice to say that upon a retrial of this cause, such testimony should not be permitted in response to the question asked, if proper objection is made thereto. The witness should have been confined to stating *factual* reasons for his opinion as to appellant's competency as a police judge. Appellant's motions to strike two portions of the witness' testimony should have been granted.

The remaining assignments of error relate to instructions given by the court or its refusal to give requested instructions. Of these we shall first notice appellant's twelfth assignment in which he excepts to the giving of the following instruction (No. 37):

"You are instructed that it is provided by statute in this state that if the defendant appear in a court of law without counsel, he shall be informed by the court that it is his right to have counsel before being arraigned, and he shall be asked if he desires the aid of counsel. You are further instructed that it was the duty of the plaintiff Lynch as judge to inform all accused persons appearing in his court of their right to counsel.

"If you find from a fair preponderance of the evidence that any accused person appearing in the plaintiff's court was not asked by the plaintiff if he desired the aid of counsel, then you are instructed that such accused person was deprived by the plaintiff of one of his legal rights."

There is thus presented to us, apparently for the first time, the question whether a municipal court judge has any duty to advise an accused person of his right to have counsel.

In *Thorne v. Callahan*, 39 Wn. (2d) 43, 234 P. (2d) 517, we quoted with approval from *In re Gensburg v. Smith*, 35 Wn. (2d) 849, 215 P. (2d) 880, as follows:

"The right of accused persons to appear and defend by counsel is expressly guaranteed by Art. I, § 22, of the state constitution, as amended by the tenth amendment thereof. In furtherance of this constitutional guarantee, a statutory duty is placed upon the trial court to advise accused persons of their right to counsel, and to appoint such counsel at public expense in proper cases."

Both of these cases involved convictions for a felony.

It will be noted that Art. I, § 22, as amended, which reads in part as follows: "In criminal prosecutions the accused shall have the right to appear and defend in person, or by counsel  . . ." does not in itself accord an accused person any right to be advised by the court that he may appear and defend by counsel, nor is any duty thereby placed upon the court to so advise an accused. See *Betts v. Brady*, 316 U. S. 455, 86 L. Ed. 1595, 62 S. Ct. 1252, and Annotation: "Duty to advise accused as to right to assistance of counsel," 3 A. L. R. (2d) 1003.

The duty, if any, can arise only by reason of statute, Rem. Rev. Stat., § 2095 [P.P.C. § 121-37], which reads as follows:

"If the defendant appear without counsel, he shall be informed by the court that it is his right to have counsel *before*

*being arraigned,* and he shall be asked if he desire the aid of counsel, and if it appear that he is unable to employ counsel, by reason of poverty, counsel shall be assigned to him by the court." (Italics ours.)

It is our conclusion, from consideration of the foregoing statute together with Rem. Rev. Stat., §§ 2093 through 2098, that arraignment is had only upon prosecution by indictment or information. See 4 Words and Phrases 228, *et seq.*, Arraignment; Black's Law Dictionary (4th ed.) Arraign, 139.

Prosecutions before municipal court judges are had, not upon indictment or information, but upon complaint. Rem. Rev. Stat., § 8995 [P.P.C. § 151-45]. We therefore conclude that Rem. Rev. Stat., § 2095 [P.P.C. § 121-37], is not applicable to proceedings in municipal courts and the legislature did not intend thereby to place upon a municipal court judge any duty to advise accused persons of their right to appear by counsel.

We are sustained in this conclusion by two decisions of the Minnesota supreme court which interpret a statute almost identical with our § 2095 as placing no duty upon a justice of the peace to advise an accused of his right to counsel. *State ex rel. Weich v. City of Red Wing,* 175 Minn. 222, 220 N. W. 611; *State v. Martin,* 223 Minn. 414, 27 N.W. (2d) 158. In the latter case, the Minnesota court said:

"This statute, of course, has no application to appearances for trial on charges of violations of municipal ordinances. Arraignments are in district court on indictment or information."

Appellant testified that he "always urged them [accused persons who appeared before him] and informed them of their right to counsel, if there was any question about it."

There was, however, considerable testimony by the attorneys who testified on behalf of respondent that they had never heard appellant advise accused persons of their right to have counsel. With such testimony before the jury, the verdict may have resulted from this erroneous instruction as to appellant's duties as police judge. We, therefore, hold that the giving of instruction No. 37 was prejudicial error,

requiring a reversal of the judgment and the remanding of the case for a new trial.

It, accordingly, becomes unnecessary to consider appellant's assignments of error Nos. 13, 19 and 20, other than to say that appellant's proposed instruction No. 25 states the law correctly and, if requested at the proper time, it should be given upon a retrial of the cause.

By the instruction complained of in appellant's eighth assignment of error the jury were told that, if they found that appellant's judgment in his court was at any time influenced or affected in any manner unfavorably to an accused person solely by reason of the accused's race, color, or station in life, then such accused person was denied one of his fundamental constitutional rights. We find no direct evidence in the record that appellant as police judge discriminated against any person because of his race or color, and reference to race or color should have been eliminated from the instruction.

Instruction No. 36, complained of in the eleventh assignment, is free from error. Instruction No. 41, complained of in the fourteenth assignment, is repetitious of No. 36 and should not be given twice upon retrial of the cause.

Appellant's chief complaint, with regard to the remaining instructions given by the court, is that they are repetitious. Respondent, in asserting the truth of its statement that appellant as police judge did not "assure fair and just treatment for defendants appearing in his court" was entitled to have the jury instructed as to the several ways in which it might be found from the evidence that appellant had failed to assure "fair and just treatment" for accused persons appearing before him. The giving of instructions upon this phase of the case necessarily involved some repetition. The trial court recognized this fact and cautioned the jury in instruction No. 46:

"Any repetition which these instructions may contain is not intended to lend emphasis to such repeated matter, and must not be so understood."

In view of the foregoing we are of the opinion that the instructions complained of in assignments Nos. 9, 10 and 15

are not objectionable and that they correctly state the law.

The court's failure to give appellant's proposed instruction No. 23, complained of in his eighteenth assignment, was not error for the reason that the court adequately covered its subject matter in instruction No. 11.

We have examined the remaining assignments of error which are directed to the refusal of the trial court to give certain requested instructions and, with the exception of appellant's proposed instruction No. 25, heretofore noted, find them to be without merit.

Because of the giving of the instruction to the jury relative to appellant's duty to advise defendants of their right to counsel, which we have held to constitute reversible error, the judgment is reversed and the cause remanded with instructions to grant appellant a new trial.

SCHWELLENBACH, C. J., MALLERY, FINLEY, and WEAVER, JJ., concur.

June 13, 1952. Petition for rehearing denied.

