IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| MEI XIA HUANG, an Individual,<br><br>            Appellant,<br><br>      v.<br><br>KANNIN LAW FIRM, P.S., a<br>Washington Professional Services<br>Corporation, and; JOHN JOSEPH<br>KANNIN IV, Individually and on behalf<br>of the Marital Community Comprised of<br>JOHN JOSEPH KANNIN IV and<br>JANE/JOHN DOE KANNIN,<br><br>            Respondent. | No. 86148-4-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

COBURN, J. — This is Mia Xia Huang's second appeal related to the Pierce County Sheriff's Department (PCS) seizure of her real property in Federal Way following the execution of a search warrant and discovery of a sophisticated illegal cannabis grow operation inside the house. In the first appeal, this court affirmed the order forfeiting her property and rejected her argument that she was not properly served under RCW 69.50.505(3). Pastor v. 713 SW 353rd Place, 21 Wn. App. 2d 415, 427, 506 P.3d 658, review denied, 200 Wn.2d 1005, 516 P.3d 378 (2022). Now Huang appeals the summary judgment dismissal of her legal malpractice suit against the attorney who represented her in that civil forfeiture hearing. We affirm.

STATEMENT OF THE CASE

On August 6, 2018, police and firefighters responded to a house fire in Tacoma.

In the process of extinguishing the fire, firefighters discovered a sophisticated cannabis grow operation. After obtaining a warrant, police searched the home and discovered 423 cannabis plants and a Western Union receipt for $900 from De Qiang Yang at 713 SW 353rd Place in Federal Way to Zhou Fu Chen.

After discovering the receipt in the Tacoma house, deputy Kristian Nordstrom began surveilling the Federal Way property. On May 3, 2019 Nordstrom applied for and was granted a search warrant for the Federal Way property. The warrant then expired due to unforeseen circumstances. He then applied for another search warrant on May 15. In it he included the information that was the basis for obtaining the first warrant and explained as much in his affidavit for the May 15 warrant, which included the following information.

Nordstrom had been employed by PCS for 25 years and, at the time of the affidavit, was assigned to the Special Investigations Unit as a narcotics investigator. Nordstrom also included his various education and training that exceeded his "in-house training" with PCS, including in the areas of street drugs enforcement and indoor cannabis cultivation. He stated that he has experience with drug-related investigations and has assisted in hundreds of narcotics and evidence search warrants for illegal substances.

Nordstrom listed various items and methods that indoor cannabis grow operations use to avoid law enforcement detection. These include, for example, "blacked out or covered windows, doors or other visibly detectable areas to avoid outsiders from identifying any portion of the grow operation." Additionally, Nordstrom described, based on his training and experience, that the odor associated with growing

2

cannabis is "'skunky'" or "'pungent sweet musty.'" He stated that information about the manufacture, distribution, or sale of controlled substances can often be found in receipts and other records. "Papers showing ownership, residency, occupancy and other indicia corroborate" can indicate how long illegal drug activity has occurred or where it has occurred.

According to Nordstrom's affidavit, the investigation following the discovery of the Western Union receipt confirmed that the Federal Way "house's outward appearance was consistent with other homes which have been converted into marijuana grows." Specifically, most of the windows' blinds were drawn and "covered so effectively that no light is ever visible through the windows." Similarly, the garage door was never fully open, "if it is opened at all." During the surveillance, PCS observed a white Toyota Sienna with a Washington license plate registered to Yang at 713 SW 353rd Place, a white Lexus SUV registered to Huang at a California address, and a maroon Toyota Sienna registered to Jiankang Chen at a Puyallup address.

Nordstrom described that on May 2 Yang's car was parked in the driveway and Huang's car was parked nearby in the cul-de-sac where the house was located. On this day, "the breeze was coming from the west/southwest." Nordstrom walked into the "short cul-de-sac" of only four homes from the northeast and could smell the odor of growing cannabis "immediately after rounding the corner of the house on the northwest corner." Directly downwind of the property, the odor of growing cannabis "only got stronger" as the officer walked toward the property "at the west/southwest head of SW 353rd PL." Nordstrom walked slowly north of 7th Avenue SW and stopped frequently to ensure that the odor was not coming from "either of the other homes on the north side

of SW 353rd PL." Nordstrom verified that no person or entity had a license to grow or process cannabis at the address, and that no medicinal cannabis cooperative was registered there.

Nordstrom's affidavit also included information obtained after May 3, 2019. Nordstrom explained that after the May 3 search warrant expired, surveillance operations at 713 SW 353rd Place continued. During the continued investigation, Nordstrom again observed Yang's Toyota Sienna and Huang's white Lexus SUV at the residence. Nordstrom wrote that on May 15, 2019, he "saw two people leave the residence in the white Lexus SUV; neither loaded anything into the vehicle before leaving the neighborhood." Nordstrom explained that day he and detective Chad Dickerson were surveilling the subject home. "[W]ithout trespassing on the property, Detective Dickerson was able to position himself directly downwind of 713 SW 353rd PL." "From this vantage point, when the breeze kicked up, Detective Dickerson was able to smell what he recognized as the odor of growing marijuana coming from 713 SW 353rd PL." Nordstrom wrote:

> In the Affiant's opinion, some of the above described equipment, chemicals, and circumstances seen or suspected to be found in the described location(s) during this investigation are consistent with items that would be required during the manufacture of marijuana, and that some of those items present a health and safety hazard to both individuals and the environment as defined in R.C.W. 70.105D.020(5), and should be destroyed pursuant to R.C.W. 69.50.511.

A superior court judge approved the search warrant, which was executed on May 20. As a result of the search, PCS discovered the home had been converted into a sophisticated cannabis grow operation. PCS detained Huang during their initial entry into the house. Huang's valid Washington State Identification Card listed her home

4

address as the 713 SW 353rd Place Federal Way property.

In early June, Huang hired Kannin, who represented her through the forfeiture proceedings. After the court granted PCS's summary judgment motion and ordered the forfeiture of Huang's property, Kannin filed a notice of withdrawal. Huang retained replacement counsel and later appealed the forfeiture order to this court, raising multiple constitutional issues. In part, Huang turned to "RCW 69.50.505(3) to argue the trial court could not adjudicate the matter at hand because she was not personally served within 15 days of the seizure of her property such that the court did not have jurisdiction to hear the civil forfeiture action." Pastor, 21 Wn. App. 2d at 426-27. This court rejected Huang's arguments after 1) noting that Huang conflated jurisdiction terminology, 2) confirming that RCW 69.50.505(3) explicitly contemplates either personal service or substitute service of the interested party, and 3) discussing in detail how the sheriff's office complied with the notice provision of RCW 69.50.505(3). Id. at 419, 423, 425-29. We need not repeat this court's analysis here.

In November 2022, Huang filed a legal malpractice complaint against Kannin. Huang alleges that Kannin breached his duty of care in two ways. First, by failing to "raise the issue of the Pierce County Sheriff's Department failure to serve Ms. Huang with the Notice of Seizure within the 15-days required by RCW 69.50.505(3) in defense of the motion for summary judgment." Second, Huang alleges that Kannin breached his duty by failing to challenge probable cause underlying the search warrant executed on May 20, 2019.

Both parties moved for summary judgment. Kannin argued that Huang could not establish Kannin breached his standard of care because she did not have a standard of

5

care expert and could not establish proximate cause because there was probable cause to issue the search warrant and Huang "had no viable jurisdiction, notice, or due process defenses." Huang requested the trial court to hold as a matter of law that the search warrant was not supported by probable cause. The trial court granted Kannin summary judgment and denied Huang's partial summary judgment as moot. The court later denied Huang's motion for reconsideration. Huang appeals.

DISCUSSION

We review summary judgments de novo. Strauss v. Premera Blue Cross, 194 Wn.2d 296, 300, 449 P.3d 640 (2019). Summary judgment is appropriate when "'there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.'" Strauss, 194 Wn.2d at 300 (alteration in original) (internal quotation marks omitted) (quoting Rangers Ins. Co. v. Pierce County, 164 Wn.2d 545, 552, 192 P.3d 886 (2008)); CR 56(c). Summary judgment is appropriate only where a trial would be "useless." Wheeler v. Ronald Sewer Dist., 58 Wn.2d 444, 446, 364 P.2d 30 (1961).

We must construe all facts and inferences in favor of the nonmoving party. Scrivener v. Clark College, 181 Wn.2d 439, 444, 334 P.3d 541 (2014). "At the very least, to support a motion for summary judgment the moving party is required to set out its version of the facts and allege that there is no genuine issue as to the facts as set out." Hash v. Children's Orthopedic Hosp. & Med. Ctr., 110 Wn.2d 912, 916, 757 P.2d 507 (1988). Alternatively, a party moving for summary judgment can meet its initial burden by showing the court that the nonmoving party has not shown sufficient evidence to support its case. Young v. Key Pharms., Inc., 112 Wn.2d 216, 225 n.1, 770

P.2d 182 (1989). "'In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial,'" thereby entitling the moving party to summary judgment. Id. at 225 (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

"To establish a legal negligence claim, a plaintiff must prove (1) the existence of an attorney-client relationship that gives rise to a duty of care on the part of the attorney to the client, (2) an act or omission by the attorney in breach of the duty of care, (3) damage to the client, and (4) proximate causation between the attorney's breach of the duty and the damage incurred." Dang v. Floyd, Pflueger & Ringer, PS, 24 Wn. App. 2d 145, 158-59, 518 P.3d 671 (2022) (citing Hizey v. Carpenter, 119 Wn.2d 251, 260-61, 830 P.2d 646 (1992)).

To establish proximate cause, the plaintiff must prove that but for the attorney's negligence, the plaintiff would have prevailed or obtained a better result in the underlying litigation. Schmidt v. Coogan, 162 Wn.2d 488, 491, 173 P.3d 273 (2007). Typically, this aspect is decided by the trier of fact, but it can be determined as a matter of law if reasonable minds could not differ. Smith v. Preston Gates Ellis, LLP, 135 Wn. App. 859, 864, 147 P.3d 600 (2006). "To avoid summary judgment, 'the plaintiff must produce evidence that the error in judgment did in fact affect the outcome.'" Dang, 24 Wn. App. 2d at 164 (quoting Clark County Fire Dist. No. 5 v. Bullivant Houser Bailey P.C., 180 Wn. App. 689, 707, 324 P.3d 743 (2014)).

Probable Cause

Huang contends that the trial court erred in its holding that Huang failed to

7

provide sufficient evidence that Kannin's failure to challenge probable cause was a proximate cause of the loss of her property. In other words, the central issue of Huang's summary judgment argument was whether probable cause supported the search warrant that led to the seizure of Huang's property.

Huang argues that the effect of Initiative 502 (I-502), which decriminalized cannabis,[1] meant the odor of cannabis "standing alone" cannot establish probable cause. Per Huang, this heightened standard establishes a genuine dispute as to whether Kannin's failure to challenge probable cause would have resulted in the suppression of the evidence located during the search of her home on May 20, 2019 and the dismissal of her forfeiture case.

We review probable cause determinations de novo. State v. Moses, 22 Wn. App. 2d 550, 555-56, 512 P.3d 600 (2022); State v. Chamberlin, 161 Wn.2d 30, 40-41, 162 P.3d 389 (2007). The Fourth Amendment to the United States Constitution requires that "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Article I, section 7 of our state constitution provides that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law." A magistrate's probable cause determination "deserves great deference on appeal" and uncertainty should weigh in favor of the search warrant's validity. State v. Klinger, 96

---

[1] "In 2012, Washington voters approved Initiative Measure 502, (I-502), Laws of 2013, ch. 3, codified as part of chapter 69.50 RCW (I-502), setting forth the circumstances attendant to the legal possession and sale of marijuana. I-502 modified the [Uniform Controlled Substances Act] by establishing a framework pursuant to which individuals and businesses could apply to the Washington State Liquor and Cannabis Board (WSLCB) for licenses to legally produce, process, or sell marijuana products in Washington. RCW 69.50.325." Headspace Int'l LLC v. Podworks Corp., 5 Wn. App. 2d 883, 894, 428 P.3d 1260 (2018).

Wn. App. 619, 624, 980 P.2d 282 (1999) (citing State v. J-R Distributors, Inc., 111

Wn.2d 764, 774, 765 P.2d 281 (1988)).  We assess search warrants in a commonsense

and practical manner rather than through a hypertechnical lens.  Moses, 22 Wn. App.

2d at 556.

Nothing in the Uniform Controlled Substances Act, chapter 69.50 RCW, prohibits

officers from relying on the odor of cannabis or any other controlled substance to

support probable cause for a search warrant.  Huang's argument, in which she cites

out-of-state cases for support,[2] assumes we agree with her premise that the probable

cause affidavit in the search warrant application of Huang's Federal Way property only

relied on the odor of cannabis.  We do not.

Indeed, "innocuous facts that do not necessarily indicate criminal activity" do not

establish probable cause.  State v. Young, 123 Wn.2d 173, 196, 867 P.2d 593 (1994).

Probable cause exists "if, when the warrant issues, the magistrate has information that

would cause a reasonably prudent person to believe that the items to be seized will

probably be found in the place to be searched at the time the search is conducted."

State v. Goble, 88 Wn. App. 503, 511, 945 P.2d 263 (1997).  "Whether a search with a

warrant is reasonable . . . depends upon all of the circumstances shown to have been

connected with it . . . ."  State v. Patterson, 83 Wn.2d 49, 61, 515 P.2d 496 (1973).

These circumstances must "extend beyond suspicion and mere personal belief."

Klinger, 96 Wn. App. at 624 (citing State v. Seagull, 95 Wn.2d 898, 907, 632 P.2d 44

---

[2] See United States v. Martinez, 811 F. App'x. 396, 397 (9th Cir. 2020); People v. Stribling, 2022 IL App (3d) 210098, 228 N.E.3d 766, 772, 471 Ill. Dec. 257; People v. McKnight, 2019 CO 36, 446 P.3d 397; Commonwealth v. Sheridan, 470 Mass. 752, 753, 25 N.E.3d 875 (2015); State v. Crocker, 97 P.3d 93, 97 (Alaska App. 2004); Commonwealth v. Barr, 266 A.3d 25, 43 (Pa. 2021); State v. Vannoy, 326 Or. App. 11, 17, 530 P.3d 503 (2023).

(1981)).

Huang relies on State v. Thein, 138 Wn.2d 133, 136-39, 151, 977 P.2d 582 (1999), wherein our state supreme court invalidated a search warrant for Thein's residence based on information gathered at a different suspect's residence that had items commonly associated with cannabis cultivation. In Thein, the only evidence that linked the first residence to Thein's property was innocuous. Id. at 137-38, 150 (stating connecting evidence included a box of nails addressed to Thein and Thein's vehicle registration listing the same address). The affidavit contained generalized statements about the belief that drug traffickers store drug inventory and related paraphernalia in their residences. Id. at 138-39. The Court held that the affidavit was based on "nothing more than generalizations" and had no "specific facts" connecting illegal activity to Thein's residence, such as "sealed windows" or "other suspicious activity" at the address. Id. at 148, 150. "[B]road generalizations do not alone establish probable cause." Id. at 148-49. The facts in Thein are distinguishable from the facts in the instant case.

Unlike in Thein, here, there is additional independent evidence that extends beyond both mere generalizations and odor alone. During the search of a sophisticated grow operation at a Tacoma house that included the recovery of 423 cannabis plants, PCS discovered a Western Union receipt for $900 with the name of De Qiang Yang and the address for the Federal Way property. According to Nordstrom's training and experience, information about the manufacture of illicit drugs can often be found in receipts and documents showing residency or occupancy can indicate where illegal drug activity has occurred. During later surveillance of the Federal Way property,

officers observed three vehicles at the house, one of which was a Toyota Sienna registered to Yang. Yang's vehicle registration also listed the Federal Way property at his address. Deputy Nordstrom also observed, in accordance with his established training and experience, the house's outer appearance was "consistent with other homes" containing cannabis grow operations. Specifically, that most of the windows had blinds drawn and were "covered so effectively that no light is ever visible through the windows." The affidavit also stated, consistent with grow operations, that the garage door was never completely open.

In addition, Nordstrom smelled the apparent odor of growing cannabis coming from the Federal Way house. On May 2, 2019, Nordstrom first smelled the odor and methodically walked around the "short cul-de-sac" of only four "homes" to ensure that the odor was not coming from "either of the other homes on the north side" of the cul-de-sac. The odor "only got stronger" as the officer walked toward the house in question. On this day, Yang's car was also observed in the driveway at the house. In an effort to validate concerns produced by the investigation, Nordstrom verified that no person or entity had been granted a license to grow or sell cannabis on the property.

Because Nordstrom could not serve the approved warrant before it expired, PCS continued surveillance and Nordstrom included additional information in his next warrant application. During the continued investigation, Nordstrom again saw the same vehicles, including Yang's white Toyota Sienna. On May 15, 2019 two people left the house. Neither person loaded anything from the house into the car before both individuals left in Huang's white Lexus SUV. Also on this day, another officer smelled the odor of cannabis directly downwind of the house.

Based on the above, the search warrant affidavit in the instant case was not rooted in mere generalizations that failed to associate criminality with the property sought to be searched. And the affidavit supporting probable cause did not rely only on the "smell alone" of cannabis.

Huang also specifically argues that the Western Union receipt was made "'stale'" by the "passage of time" of nine months such that it is not sufficient to establish probable cause that criminal activity was occurring at the Federal Way property. We disagree.

It is true that "stale" evidence in some circumstances cannot support probable cause. See State v. Friedrich, 4 Wn. App. 2d 945, 955, 425 P.3d 518 (2018) (defining stale as "[a] passage of time between an observation of criminal activity and the . . . search warrant affidavit . . . so prolonged that it is no longer probable that a search will reveal criminal activity or evidence") (citing State v. Lyons, 174 Wn.2d 354, 360-61, 275 P.3d 314 (2012)). "The test for staleness of the information in an affidavit is common sense." State v. Hall, 53 Wn. App. 296, 300, 766 P.2d 512 (1989). In the instant case, the information from the Yang receipt that listed the Federal Way address is simply a fact. That fact does not become "stale" simply because the receipt was found nine months prior. The search warrant affidavit included that fact with the more recent information that a vehicle registered to Yang was seen at the Federal Way property where detectives detected the emission of the odor of cannabis from a house that displayed attributes associated with a cannabis grow operation. Thus, here, the actual observations of criminal activity occurred during the subsequent investigation of the Federal Way property. Huang's staleness argument is unpersuasive.

Lastly, Huang argues that detectives did not make other observations associated with an illegal cannabis grow operation, such as the presence of a guard dog, or heat emitting from outside walls hotter than the outside temperature. Huang also asserts that the search warrant affidavit does not establish how officers verified the odor they smelled was cannabis with an illegal THC concentration as opposed to merely "industrial hemp."

But we do not focus on what Nordstrom did not do. We instead consider the facts set out in the four corners of the affidavit with the guiding principle that while facts in isolation might not constitute probable cause, they "may be viewed together and with other facts to establish probable cause." State v. Tarter, 111 Wn. App. 336, 341, 44 P.3d 899 (2002). And we do so while giving "great deference" to the issuing judge and resolving doubts in favor of the warrant's validity. See Klinger, 96 Wn. App. at 623-24.

When taken together, the facts set forth in Nordstrom's affidavit are sufficient to support a commonsense determination that probable cause supported the granting of the search warrant.[3]

### Compliance with RCW 69.50.505(3)

Huang asserts, "[b]y failing to properly raise strict compliance with RCW 69.50.505(3) on behalf of Ms. Huang, KANNIN waived that issue, which could not thereafter be raised on her behalf on appeal." We first note that one of Huang's

---

[3] Because we review summary judgment de novo, we need not address Huang's assertion that the trial court improperly held that a non-moving party has a mandatory burden to produce a qualifying expert witness to offer testimony regarding proximate cause in a legal malpractice action. See Lynch v. Republic Publ'g Co., 40 Wn.2d 379, 389, 243 P.2d 636 (1952) (holding that expert testimony is often required to determine whether attorney breached their duty of care because the law is "highly technical"); Dang, 24 Wn. App. 2d at 164-65 (holding that expert testimony is not required to establish proximate cause in a legal malpractice action).

appellant attorneys in this appeal also represented her in the appeal of the contested forfeiture proceeding. Pastor, 21 Wn. App. 2d at 415. In that appeal, Huang used "RCW 69.50.505(3) to argue the trial court could not adjudicate the matter at hand because she was not personally served within 15 days of the seizure of her property such that the court did not have jurisdiction to hear the civil forfeiture action." Id. at 426-27.

Now Huang, once again asserts that PCS did not comply with RCW 69.50.505(3) because it did not personally serve Huang within 15 days. Curiously, Huang argues that she did not already appeal the non-compliance issue and this court instead solely addressed her constitutional claims related to service. Huang both misconstrues our holding in Pastor and continues to mischaracterize what constitutes compliance under RCW 69.50.505(3). See 21 Wn. App. 2d at 428. As this court has held separately, "[t]here is no reason to require a useless trial in a malpractice action involving a meritless underlying case." Slack v. Luke, 192 Wn. App. 909, 919, 370 P.3d 49 (2016).

Huang further contends that this appeal is somehow different than the previous appeal because she did not make a "Bruett" argument that RCW 69.50.505 requires strict compliance. See Bruett v. 18328 11th Ave. N.E., 93 Wn. App. 290, 302, 968 P.2d 913 (1998). Under Bruett, even actual notice of the warrant for arrest in rem "does not excuse the statutory requirements of service of process." Bruett, 93 Wn. App. at 302. "[T]o accomplish civil forfeiture under RCW 69.50.505, the seizing agency must strictly comply with the service of process requirements provided in the statute." Id. at 302. But in Bruett, the arrest warrant in rem was never served. The question in that case was whether service under the statute was necessary when the claimant already has

14

actual knowledge of the warrant.  Id.

This court, in Pastor, thoroughly examined the record, discussed the issue of notice, and held that "service here was proper under the statute."  21 Wn. App. 2d at 426-28.  Huang did not miss her opportunity to challenge improper service, which this court has already rejected.  We need not address it further.

We affirm.

_____
Coburn, J.

WE CONCUR:

_____
Chung, J.

_____
Mann, J.